Richard M. Scherer, Jr., Esq. (*pro hac vice*)
LIPPES MATHIAS LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Facsimile: (716) 853-5199
Email: rscherer@lippes.com

Jeff W. Poole, Esq. (SBN 291783)
HAMRICK & EVANS, LLP
2600 West Olive Avenue, Suite 1020
Burbank, California 91505
Telephone: (818) 763-5292
Facsimile: (818) 763-2308
Email: jpoole@hamricklaw.com

*Attorneys for Defendant Joseph DiNardo*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

EDELSON PC, an Illinois Professional Corporation,

Plaintiff,

v.

DAVID LIRA, an individual,
KEITH GRIFFIN, an individual,
ERIKA GIRARDI a/k/a ERIKA JANE, an individual,
EJ GLOBAL LLC, a California limited liability company,
CHRISTOPHER KAMON, an individual,
GEORGE HATCHER, an individual,
WRONGFUL DEATH CONSULTANTS, a California corporation,
JOSEPH DINARDO, an individual,
CALIFORNIA ATTORNEY LENDING, II, INC., a New York corporation,

Defendants.

Case No.: CV 22-8787-JFK (MAA)
(Before the Hon. John F. Walter)

**DEFENDANT JOSEPH DINARDO'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**

Complaint Filed: July 6, 2022
Motion Date: February 27, 2023
Time: 1:30 p.m.
Location: Courtroom 7A

LIPPES MATHIAS LLP

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2023, or as soon thereafter as may be heard in United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 7A in the United States District Court, Central District of California the Honorable John F. Walter, Defendant Joseph DiNardo ("DiNardo"), by and through its undersigned attorneys, will and hereby does move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an Order dismissing Plaintiff Edelson PC's ("Plaintiff") Complaint in its entirety.

This Motion is made on the grounds that Plaintiff's Complaint fails to state a cause of action against DiNardo as a matter of law. Specifically, Plaintiff impermissibly alleges a standalone cause of action for money had and received against DiNardo. This is a clear attempt to ascribe personal liability upon DiNardo without piercing the corporate veil of California Attorney Lending II, Inc. ("CAL"), notwithstanding the fact that DiNardo has no ownership interest in CAL. Further, Plaintiff failed to sufficiently allege the necessary elements to bring a claim for money had and received. Additionally, it appears from the face of the Complaint that Plaintiff's claim is time-barred as the moneys were purportedly received by DiNardo more than two-years prior to the filing of the present Complaint. Accordingly, Plaintiff's Fifth and only cause of action against DiNardo for money had and received must be dismissed in its entirety.

- 1 -

DEFENDANT JOSEPH DINARDO'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LIPPES MATHIAS LLP

This Motion is based on the Memorandum of Points and Authorities set forth below and incorporated herein by reference, the pleadings and all other relevant documents of the Court's file in this action, oral argument, if any, and DiNardo's Reply, if any.

DATED:      January 23, 2023

**LIPPES MATHIAS LLP**

_s/ Richard M. Scherer, Jr._
Richard M. Scherer, Jr., Esq. (*pro hac vice*)

And

**HAMRICK & EVANS, LLP**
Jeff W. Poole, Esq. (SBN 291783)

*Attorneys for Defendant Joseph DiNardo*

- 2 -

**DEFENDANT JOSEPH DINARDO'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................... - 1 -

PRELIMINARY STATEMENT ......................................................................... - 1 -

RELEVANT FACTUAL BACKGROUND ....................................................... - 4 -

I.    Legal Standard ...................................................................................... - 9 -

II.   Plaintiff Stepped Into The Shoes Of The Lion Air Clients And Has No Claim For Recovery .......................................................................... - 10 -

III.  Plaintiff's Fifth Cause Of Action For Money Had And Received Fails As A Matter Of Law .................................................................................. - 12 -

    a.    *Plaintiff Fails To Sufficiently Allege The Facts Necessary To Satisfy The Elements Of A Claim For Money Had And Received*............. - 12 -

        i.    Plaintiff fails to plausibly allege a claim for money had and received ...................................................................................... - 12 -

        ii.   Plaintiff fails to articulate a sum certain received by DiNardo  - 13 -

        iii.  Plaintiff fails to articulate a relationship or legal principal requiring DiNardo remit payment to Plaintiff ........................................... - 15 -

    b.    *Plaintiff's Claim For Money Had And Received Is Outside The Applicable Statute Of Limitations* ................................................. - 18 -

    c.    *Money Had And Received Is Not A Standalone Cause Of Action In California* ...................................................................................... - 21 -

IV.   Plaintiff Fails to Allege That DiNardo Bears Any Personal Liability For CAL ...................................................................................................... - 22 -

CONCLUSION ............................................................................................... - 25 -

LIPPES MATHIAS LLP

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Sur. Co. v. Bank of California*,
    133 F.2d 160 (9th Cir. 1943) ........................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 9

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1988) ............................................................ 9

*Barron v. Reich*,
    13 F.3d 1370 (9th Cir. 1994) ............................................................ 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... 9

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007) ................................................. 21, 22

*Cary v. Curtis*,
    44 U.S. 236 (1845) .......................................................................... 16

*Chandra v. The Boeing International Sales Corporation*,
    Case Number 1:18-cv-07686 ............................................................ 8

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir.1994) ............................................................. 10

*Crosbie v. Endeavors Techs., Inc.*,
    2009 WL 3464135 (C.D. Cal. Oct. 22, 2009) ............................... 21

*Curtis' Adm'x v. Fiedler*,
    67 U.S. 461 (1862) .......................................................................... 16

*Damayanti et al. v. The Boeing Company*,
    Case Number 1:19-cv-02979 .......................................................... 20

ii

LIPPES MATHIAS LLP

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  228 F.R.D. 508 (S.D.N.Y. 2005) ...............................................................24, 25

*Haas v. Travelex Ins. Servs. Inc.*,
  555 F. Supp. 3d 970 (C.D. Cal. 2021) ..............................................................13

*In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*,
  2021 WL 3560783 (C.D. Cal. Aug. 6, 2021) ....................................................22

*Innovus Prime, LLC v. Panasonic Corp.*,
  2013 WL 3354390 (N.D. Cal. July 2, 2013) ...............................................10, 11

*Jaffee v. Carryl*,
  2016 WL 3511782 (C.D. Cal. June 27, 2016) ......................................15, 16, 17

*Jogani v. Superior Court*,
  165 Cal. App. 4th 901 (2008) ............................................................................21

*Kandel v. Brother Int'l Corp.*,
  2009 WL 9100406 (C.D. Cal. Feb. 13, 2009) ...................................................13

*Kasim et al. v. The Boeing Company*,
  Case Number 1:19-cv-02982 ..............................................................................20

*Kawczynski v. Kawczynski*,
  2019 WL 2503627 (N.D. Cal. June 17, 2019)....................................................12

*Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*,
  2011 WL 11501 (N.D. Cal. Jan. 4, 2011).........................................................21

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) .............................................................................10

*Misyadi et al. v. The Boeing Company*,
  Case Number 1:19-cv-02980 ..............................................................................20

*Morris v. New York State Dep't of Tax'n & Fin.*,
  82 N.Y.2d 135 (1993) ........................................................................................23

LIPPES MATHIAS LLP

*Murphy v. Am. Gen. Life Ins. Co.*,
    74 F. Supp. 3d 1267 (C.D. Cal. 2015) ...................................................... 12, 18

*S.E.C. v. Hickey*,
    322 F.3d 1123 (9th Cir.) ...................................................................................23

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ................................................. 13, 14, 15

*Sec. & Exch. Comm'n v. Hickey*,
    335 F.3d 834 (9th Cir. 2003) ..........................................................................23

*Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*,
    401 F. Supp. 3d 433 (S.D.N.Y. 2018)19 ................................................... 24, 25

*Stratton v. Hanning*,
    139 Cal. App. 2d 723 (1956) ..........................................................................16

*Straughter v. Safety Sav. & Loan Ass'n*,
    244 Cal. App. 2d 159 (Ct. App. 1966) ............................................................16

*TNS Holdings, Inc. v. MKI Sec. Corp.*,
    92 N.Y.2d 335 (1998) .....................................................................................24

*Tomek v. Apple, Inc.*,
    2012 WL 2857035 (E.D. Cal. July 11, 2012) ..................................................14

*Vaughn v. Certified Life Ins. Co. of Cal.*,
    238 Cal. App. 2d 177 (Ct. App. 1965) ............................................................15

*Wade v. OnePlus USA Corp.*,
    2022 WL 3549590 (N.D. Cal. Aug. 17, 2022) .................................................13

*Warren v. Lawler*,
    343 F.2d 351 (9th Cir. 1965) ..........................................................................18

*Warti et al. v. The Boeing Company*,
    Case Number 1:19-cv-05842 ...........................................................................20

iv

*Yes Online Inc. v. G Master Inc.*,
    2018 WL 6016281 (C.D. Cal. Feb. 12, 2018) ....................................................21

*Zaenudin et al. v. The Boeing Company*,
    Case Number 1:19-cv-02987 ............................................................................20

**Statutes**
Cal. Code Civ. Proc. § 339(1) ................................................................................18

**Rules**
Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 9

LIPPES MATHIAS LLP

v

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Joseph DiNardo, LLC ("DiNardo") presents this Memorandum of Points and Authorities in support of his motion (the "Motion") to dismiss the Fifth cause of action for money had and received in Plaintiff Edelson PC's ("Plaintiff") Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). The issue to be decided is whether the Fifth cause of action of the Complaint – the only cause of action against DiNardo – plausibly states a cause of action.

## PRELIMINARY STATEMENT

Plaintiff and its co-counsel, the law firm Girardi Keese, represented the families of decedents in the infamous Lion Air Flight JT610 accident. Girardi Keese is now subject to various high-profile litigation and investigations concerning its misappropriation of the settlement funds ("Lion Air Settlements") owed to the families of the Lion Air victims.

Plaintiff commenced the present action as the assignee of five families of certain Lion Air victims. Accordingly, Plaintiff has stepped into the shoes of the five Lion Air families identified in the Complaint. (Doc. 1, fn. 1). Importantly, as explained more fully below, these five families have received the full amount of their settlement. As such, any claim Plaintiff brings on their behalf was extinguished. As Plaintiff merely commenced an action on behalf of its assignors—who have been fully satisfied—Plaintiff's entire action must be dismissed.

LIPPES MATHIAS LLP

Further, Plaintiff's action is a clear attempt to cast blame downstream to entities that are far removed from the conduct of Girardi Keese and Plaintiff's own role in the underlying Lion Air litigation. Plaintiff's Complaint is littered with mudslinging more reminiscent of a gossip magazine article than a legal pleading.

There is no clearer example of Plaintiff's tactic of salacious but unfounded storytelling than Plaintiff's claim against DiNardo. Understanding that DiNardo played no role in the scheme to misappropriate the Lion Air Settlements, Plaintiff brings one vague and speculative claim for money had and received against DiNardo. Specifically, Plaintiff alleges that defendant California Attorney Lending, II, Inc. ("CAL"), entered into a promissory note with Girardi Keese, whereby Girardi Keese would pay back its loan to CAL with a portion of settlements it received— including the Lion Air Settlements. Plaintiff alleges that the Lion Air Clients had settlement agreements, which were court approved, that provided that Boeing (the defendant in the Lion Air actions) would send money to CAL directly – a common occurrence in the instances of litigation funding. Plaintiff alleges in the vaguest of terms that "upon information and belief" CAL transferred some or all of the Lion Air Settlement moneys it received to DiNardo at some point in time. Plaintiff's claim against DiNardo is a clear attempt to hold him personally liable for the alleged conduct of CAL, without any allegation that could support a veil piercing claim

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

against DiNardo.[1] Plaintiff is attempting to hold DiNardo responsible for CAL's conduct in a clear effort to side step the high burden required to disregard CAL's corporate form. This is patently improper.

Given that its claim against DiNardo is grounded in pure conjecture, Plaintiff attempts to bolster its allegation by discrediting DiNardo's character—citing to tax issues occurring over twenty years ago, which have no connection to the present dispute. Plaintiff's attempt to paint a disparaging picture does not, and cannot, overcome the fatal deficiencies in Plaintiff's Complaint. Plaintiff impermissibly attempts to raise the claim of money had and received as a standalone claim, which is fatal. Additionally, Plaintiff fails to allege the elements necessary to support a money had and received claim. For example, Plaintiff fails to articulate the sum certain DiNardo allegedly received. Further, Plaintiff fails to articulate any legal principle that extends the reach of money had and received to a downstream individual with no connection to either the Lion Air families or to Plaintiff. Moreover, Plaintiff's Complaint articulates that the Lion Air Settlement money received by CAL occurred more than two years before the filing of this action. As such, this claim is time barred. In short, Plaintiff's Fifth cause of action against DiNardo must be dismissed.

---

[1] The Complaint alleges that DiNardo founded CAL. Doc. 1, ¶32. While DiNardo must accept the allegations as true, it is noted that this allegation is simply not true. DiNardo has no ownership interest in CAL.

LIPPES MATHIAS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **RELEVANT FACTUAL BACKGROUND**

Plaintiff's Complaint is brought as the assignee of the Lion Air Client's interest. (Doc. 1 at fn. 1). The "Lion Air Clients" are comprised of Bias Ramadhan A.S. Bin Misyadi, Guntur Idil Akbar Bin Misyadi, Dzikri Agung Haryadi, and Hana Kamila Chairunnisa Binti Misyadi (the "Bias Family"); Dian Daniaty Binti Uidn Zaenudin and minor M.N. (the "Dian Family"); Anice Kasim, Zahra Amanda, and minors T.A.S. and S.C.S. (the "Anice Family"); Elza Warti, Multi Rizki, Westhi Ramadina, Mugni Rifki, Muhammad Nur Fuadi, M. Nuran Tk. Mudo (the "Multi Family"); Septiana Damayanti and minors N.I.R. and A.M.Q. (the "Septiana Family").

As relevant here, the Lion Air Client's retained Girardi Keese to represent them in actions against the Boeing Company ("Boeing") for the loss of family members in the Lion Air Flight JT610 accident. Requiring local counsel, Girardi Keese retained Plaintiff. *Id.* at ¶94. Plaintiff alleges that Girardi Keese agreed to remit 50% of the settlement proceeds of any Lion Air Settlement to CAL. *Id.* at ¶98. The Lion Air Clients received individual settlements. *Id.* at ¶100. As part of those settlement agreements, approved by the Court, money was sent directly to CAL. *Id.* at ¶¶100, 109. The Complaint sets forth that payments to CAL were made on or before March 10, 2020. *Id.* at ¶¶109,110. The remaining funds, however, are alleged

- 4 -

to have never been paid to the Lion Air Clients and instead are alleged to have been misappropriated by Girardi Keese to fund Tom Girardi's lavish lifestyle. *Id.* at ¶4.

According to Plaintiff, Girardi Keese accomplished its scheme by stealing and co-mingling funds, laundering money through its payroll and credit card accounts, comingling money from lenders to pay off delinquent payments to clients; paying case runners, oversubscribing fees, falsifying expenses, fraudulently claiming it was self-insured for legal malpractice, bribing former judges, using clients' settlement money for personal use, and lying and threatening clients. *Id.* at ¶4. In essence, Girardi Keese would impermissibly use settlement funds from new clients to fund Tom Girardi's lifestyle and pay off other clients, whose settlement funds had previously been depleted. *Id.* at ¶48.

Plaintiff alleges that to help keep the scheme afloat, Girardi Keese obtained tens of millions in financing from lenders. *Id.* at ¶9. Plaintiff alleges that lenders like CAL would enter into loan agreements with Girardi Keese, whereby the lenders would extend loans to Girardi Keese in exchange for a percentage of the settlement money Girardi Keese obtained on behalf of its clients. *Id.* Plaintiff alleges that CAL was founded by DiNardo's company. *Id.* at ¶32.

In 2019, Tom Girardi and his wife Erika Girardi sought funding from CAL. *Id.* at ¶85. Plaintiff claims – incorrectly – that DiNardo had actual knowledge that Girardi was stealing from his clients because DiNardo reviewed Girardi Keese's

monthly bank statements. *Id.* at ¶88. Plaintiff states, "[i]n exchange for the additional loans, Tom agreed that California Attorney Lending would receive 50% of the attorneys' fees from various cases when they settle, including from the Lion Air Clients." *Id.* at ¶93. Plaintiff contends that "DiNardo included terms in the 2019 loan documents that required the settling defendants in the covered cases to wire their 50% portion of the attorneys' fees *directly* to California Attorney Lending." *Id.* Plaintiff alleges that DiNardo should have known that Girardi Keese's finances were not adding up and that there would be nothing left for Girardi Keese after it remitted payment to CAL. *Id.* at ¶94.

Plaintiff's Complaint seeks to recover money misappropriated by Girardi Keese and is brought by Plaintiff as the assignee of the Lion Air Client's interest. *Id.* at fn. 1. In this regard, Plaintiff and the Lion Air Clients entered into an assignment agreement, which was filed in the Northern District of Illinois, Case Number: 1:18-cv-07686 (Doc. 1360). A true and accurate copy of the assignment agreement is attached to DiNardo's Request for Judicial Notice as Exhibit A, which was filed contemporaneously with this motion (hereinafter cited to as "Ex. A").

The assignment agreement states in relevant part:

Upon the Effective Date, and to the extent permitted by law, the Clients assign to Edelson their full right, title, and interest in or to any and all claims, causes of action, judgments, decrees, orders of restitution, or entitlement to compensation or to punitive or exemplary damages, whether arising under foreign or domestic law or statute, common law, civil law, or equity, related to any misconduct by any person, including

- 6 -

the Investigative Targets (except for claims against Edelson or Hudson), arising from or related in any way to the Action or any aspect of the conduct or settlement of the Action including, without limitation, claims concerning the Misappropriation that were made or could be made in the bankruptcies, and all judgments on contempt or sanctions against any person or entity (the "Assigned Claims").

*Id.* p. 4.

Pursuant to the terms of the assignment agreement, the parties agreed that Boeing – the defendant in the action – reached a global settlement with the Lion Air Clients. *Id.* The assignment agreement further states that the Lion Air Clients confirmed receipt of all settlement funds from Boeing between March 4, 2020 and June 12, 2020. *Id.* The assignment agreement states that Plaintiff "later learned" that Girardi Keese, and others, stole or otherwise misappropriated from their settlements."

The assignment agreement details the amounts of money allegedly misappropriated by Girardi Keese and "others." *Id.* Namely, it relays that the Lion Air Client's funds were still owed purportedly misappropriated funds as follows: Bias Family- $500,000.00; Dian Family-$500,000.00; Anice Family-$500,000.00; Multi Family- some redacted amount; and Septiana Family-$500,000.00. *Id.* p. 1. As part of the assignment, Hudson Property & Casualty remitted payments to the Lion Air Clients in the amounts of: Bias Family- $500,000.00; Dian Family-$500,000.00; Anice Family-$500,000.00; Multi Family- some redacted amount; and Septiana

- 7 -

Family-$500,000.00. *Id.* p. 3. As set forth in the assignment agreement, the Lion Air Clients were each made whole. *Id.*

As set forth above, CAL received, with Court approval, certain portions of these settlement funds. The dates payments were made to CAL can be established based on publicly filed documents. Namely, the Lion Air Clients' settlement agreements with Boeing, which provided that Boeing would send certain settlement funds directly to CAL. *Id.* at ¶¶100, 109, 310. Further, the Joint Stipulation For Use In Contempt Proceedings Regarding Payment Of Settlement Funds filed in *Chandra v. The Boeing International Sales Corporation*, Case Number 1:18-cv-07686 ("Stipulation") in the Northern District of Illinois, sets forth the redacted amounts of the approved settlement agreements and the date the moneys were transferred. A true and accurate copy of the Stipulation is attached to DiNardo's Request for Judicial Notice as Exhibit B, which was filed contemporaneously with this motion (hereinafter cited to as "Ex. B"). The Stipulation establishes that, with respect to each of the named Lion Air Clients' Settlements, Boeing remitted payment directly to CAL on or before June 12, 2020. *See* Ex. B.

It is the money that CAL received from Boeing as part of the settlement agreements that is the subject to the single claim against DiNardo. In this regard, the relevant allegations against DiNardo are sparce and are largely limited to Plaintiff's single claim that, "[o]n information and belief, California Attorney Lending

- 8 -

transferred some or all of the money it received from the Lion Air Clients' settlements to DiNardo." *Id.* at ¶315. However, as set forth below, Plaintiff is unable to maintain a cause of action for money had and received against DiNardo and Plaintiff's single cause of action against DiNardo must be dismissed, with prejudice.

## **ARGUMENT**

### I.    **Legal Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is proper when there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). However, the court is not required to accept conclusory legal allegations "cast in the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Importantly, the Court may take judicial notice of public records outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1160–61 (S.D. Cal. 2020).

## II.  Plaintiff Stepped Into The Shoes Of The Lion Air Clients And Has No Claim For Recovery

Plaintiff's entire Complaint must be dismissed. As the assignee of the Lion Air Clients' rights and potential claims, Plaintiff may only bring an action if the Lion Air Clients have a right to pursue a claim. As established by the assignment agreement, the Lion Air clients have been made whole. As such, the present action seeks recovery of money, for which Plaintiff is no longer entitled.

It is well settled that "assignment results in the assignee "stepping into the shoes with regard to the rights that the assignor held and not in an expansion of those rights." *Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *5 (N.D. Cal. July 2, 2013). Thus, assignment "necessarily contemplates the continued existence of the debt or claim assigned." *Am. Sur. Co. v. Bank of California*, 133 F.2d 160, 164–65 (9th Cir. 1943).

- 10 -

LIPPES MATHIAS LLP

LIPPES MATHIAS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Plaintiff is not entitled to bring a claim as the assignee of the Lion Air Clients because they have already been made whole. Specifically, the assignment agreement details that the Lion Air Client's funds were misappropriated funds, by Girardi Keese and others. *See* Ex. B. However, the assignment agreement sets forth that Hudson Property & Casualty remitted that exact amount of money to the Lion Air Clients (Bias Family- $500,000.00; Dian Family-$500,000.00; Anice Family-$500,000.00; Multi Family- some redacted amount; Septiana Family-$500,000.00). The assignment agreement notes that the payments made by Hudson Property & Casualty was the sole responsibility of Hudson Property & Casualty, not Plaintiff. *Id.* Accordingly, the financial damage the Lion Air Clients suffered were rectified and any claim the Lion Air Clients may have had to recover same was extinguished. In other words, because the Lion Air Clients were made whole, they could not seek additional funds from the named defendants, including DiNardo.

Plaintiff as assignee is constrained to the rights and limitations of the Lion Air Clients' position. Plaintiff's right to seek additional recovery was not expanded by virtue of the assignment agreement. *Innovus Prime, LLC,* 2013 WL 3354390, at *5. Accordingly, Plaintiff has no ground to pursue moneys from any of the named defendants, including DiNardo and any claims related to the alleged misappropriated funds must be dismissed.

- 11 -

**III.    Plaintiff's Fifth Cause Of Action For Money Had And Received Fails As A Matter Of Law**

*a. Plaintiff Fails To Sufficiently Allege The Facts Necessary To Satisfy The Elements Of A Claim For Money Had And Received*

            i.<u>Plaintiff fails to plausibly allege a claim for money had and received</u>

Central to a claim for money had and received is a claim that the defendant "has received money which belongs to [the plaintiff], and which in equity and good conscience should be paid over to the [the plaintiff]." <u>*Murphy v. Am. Gen. Life Ins. Co.,* 74 F. Supp. 3d 1267, 1280 (C.D. Cal. 2015)</u>; *see also* <u>*Kawczynski v. Kawczynski,* 2019 WL 2503627, at *4 (N.D. Cal. June 17, 2019)</u>. Plaintiff's claim fails to plausibly allege that the money purportedly received by DiNardo should in equity and good conscious be paid over to Plaintiff.

Plaintiff alleges that CAL was not entitled to any portion of the Lion Air Clients' settlement proceeds. This claim is directly at odds with the allegations in the Complaint. Plaintiff concedes that the Lion Air settlement agreements, which directed payment from Boeing directly to CAL, were reviewed and approved by the Court. Doc. 1, ¶100. Plaintiff fails to offer any argument as to why the court reviewed and approved transfers constitute an impermissible taking of the Lion Air Client's funds.

Given that the Court approved the transfer of funds sent to CAL, it is inconceivable that Plaintiff now asserts that those same Court approved funds,

- 12 -

LIPPES MATHIAS LLP

purportedly transferred from CAL to DiNardo, should "in equity and good conscience" be remitted to Plaintiff. Simply stated, transferring the Court approved funds from CAL to DiNardo does not transform the status of the funds to something untoward. Thus, Plaintiff's claim for money had and received must be dismissed.

### ii. Plaintiff fails to articulate a sum certain received by DiNardo

"A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Haas v. Travelex Ins. Servs. Inc.,* 555 F. Supp. 3d 970, 981 (C.D. Cal. 2021). Plaintiff's claim must be dismissed because it fails to allege a sum certain that DiNardo purportedly received from Plaintiff.

Plaintiff's claim for money had and received fails as a matter of law. First, Plaintiff's Complaint does not allege a statement of indebtedness in a sum certain, as required to sufficiently plead a cause of action for money had and received. *See Wade v. OnePlus USA Corp.,* 2022 WL 3549590, at *2 (N.D. Cal. Aug. 17, 2022) ("[t]he claim for money had and received is dismissed for failure to plead a sum certain"); *Haas,* 555 F. Supp. 3d at 981; *Saroya v. Univ. of the Pac.,* 503 F. Supp. 3d 986, 1000 (N.D. Cal. 2020); *see also Kandel v. Brother Int'l Corp.,* 2009 WL 9100406, at *1 (C.D. Cal. Feb. 13, 2009).

In *Saroya,* 503 F. Supp. 3d at 1000, the Court dismissed the plaintiff's claim for money had received because, *inter alia*, the plaintiff failed to set forth a definitive

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

LIPPES MATHIAS LLP

amount purportedly received by the defendant. It stated, "[a]lthough Plaintiff argues allegations that he paid "approximately $15,000 in tuition and fees" and that University of the Pacific "delivered approximately 50%" establish a sum certain, Plaintiff fails to demonstrate that his request for a pro-rated reimbursement and mere estimates substantiate his money had and received claim." *Id.* As the plaintiff's allegations were mere estimates, the Court denied the plaintiff's claim without leave to amend. *Id.* The Eastern District of California reached the same conclusion in *Tomek v. Apple, Inc.,* 2012 WL 2857035, at *7 (E.D. Cal. July 11, 2012). There, the Court noted that "the plaintiff failed to allege anywhere in the FAC that Defendant owes him any concrete amount." As such, the plaintiff's claim was dismissed. *Id.*

Here, Plaintiff fails to allege a sum certain received by DiNardo. Instead, the Complaint sets forth the terms of the purported promissory note entered into by Girardi Keese and CAL. Doc. 1, ¶¶307-310. While Plaintiff alleges that Girardi Keese "would 'Execute an irrevocable letter of instruction authorizing payment directly to [California Attorney Lending] from the defendant and / or its insurer(s) of $3,500,000 from the Net Fees and Expenses due to [Girardi Keese] on the Lion Air cases,'" Plaintiff does not set forth if such money was actually remitted to CAL, or in what amount. Doc. 1, ¶¶306-316.

Given that Plaintiff was unable to articulate a sum certain remitted to CAL, Plaintiff fails to set forth the amount of money purportedly transmitted from CAL to

DiNardo. Doc. 1, ¶¶306-316. Plaintiff merely states, "[o]n information and belief, California Attorney Lending transferred some or all of the money it received from the Lion Air Clients' settlement to DiNardo." *Id.* at ¶315. In this regard, Plaintiff's Complaint is even more vague than the allegations in *Saroya, supra.,* where even an estimate of the moneys received was insufficient. Plaintiff only alleges that CAL transferred "some or all of the money it received" from the Lion Air Settlements to DiNardo. This is simply a shot in the dark.

It is readily apparent that Plaintiff cannot articulate a sum certain because its claim is predicated on a purported downstream flow of settlement moneys that CAL may have received, which may in turn have been disbursed to DiNardo. Accordingly, its money had and received must be dismissed with prejudice.

iii. Plaintiff fails to articulate a relationship or legal principal requiring DiNardo remit payment to Plaintiff

Plaintiff also fails to identify a relationship or legal principal obligating DiNardo to remit payment to Plaintiff, which is fatal to its claim.

"[T]o be sufficiently pleaded, a common count "must state not only the indebtedness of the defendant but also directly or impliedly the relationship or the express or implied legal principle upon which a promise to plaintiff is predicated." *Jaffee v. Carryl*, 2016 WL 3511782, at *3 (C.D. Cal. June 27, 2016) *citing Vaughn v. Certified Life Ins. Co. of Cal.*, 238 Cal. App. 2d 177, 181 (Ct. App. 1965). This is because the basic premise of a claim for money had and received is based on an

LIPPES MATHIAS LLP

implied promise between the parties. *See Cary v. Curtis,* 44 U.S. 236, 250 (1845); *Straughter v. Safety Sav. & Loan Ass'n*, 244 Cal. App. 2d 159, 164 (Ct. App. 1966) ("(A) complaint is not good as a common count unless it either expressly alleges a promise by defendant to pay or alleges facts from which such a promise is implied by law"); *Stratton v. Hanning,* 139 Cal. App. 2d 723, 727 (1956). Notably, however, "the law never implies a promise to pay unless some duty creates such an obligation, and more especially it never implies a promise to do an act contrary to duty or contrary to law." *Curtis' Adm'x v. Fiedler,* 67 U.S. 461, 478 (1862). In short, it is necessary to allege a relationship or promise between the defendant and the plaintiff.

In *Jaffee,* 2016 WL 3511782, at *3, this Court dismissed the plaintiff's claim for money had and received because, in part, the plaintiff failed to allege any relationship between certain defendants and the plaintiff. There, the plaintiffs alleged that they were the victims of a financial scam. *Id.* at *1. The plaintiffs alleged that they transferred their investment portfolio to the defendant CCM, managed by Defendant Carryl, who then transferred those funds to the Oppenheimer Defendants. *Id.* The plaintiffs commenced an action claiming, *inter alia*, money had and received against the Oppenheimer Defendants. *Id.* at *3. The Court dismissed this claim because "[p]laintiffs only allege that their funds were wired into Carryl's bank account and that Carryl then transferred those funds to the Oppenheimer Defendants." *Id.* Accordingly, as there were no facts alleged "to establish the legal

- 16 -

principle upon which Defendants' indebtedness to Plaintiffs is predicated" the Court dismissed the money had and received claim. *Id.*

As seen in *Jaffee*, Plaintiff fails to allege any relationship or promise to pay by and between Plaintiff (or the Lion Air Clients) and DiNardo. The Complaint only sets forth a relationship between CAL and Girardi Keese—one that was reviewed by a Court. Doc. 1, ¶100. Plaintiff alleges CAL agreed to extend a promissory note to Girardi Keese in exchange for a portion of the settlement moneys received in the recovery of the Lion Air matter. The Complaint is silent with respect to any promise made to Plaintiff by CAL regarding the subject funds. As Plaintiff was unable to even allege a promise made by and between CAL and Plaintiff, Plaintiff did not, and cannot, allege that DiNardo (another layer removed from Plaintiff), made a promise to Plaintiff. Absent a relationship or promise between DiNardo and Plaintiff, the claim must be dismissed.

To permit this cause of action to proceed against DiNardo, an individual that never made any promises to Plaintiff, impermissibly expands the reach of the claim for money had and received to all downstream recipients of moneys alleged to be improperly held. It cannot go unmentioned that Boeing's immediate transfer of funds to CAL was approved by the Court. Doc. 1, ¶100. It is inconceivable that DiNardo could be held to have impermissibly retained that same money after it was purportedly transferred to him from CAL. CAL entered into an agreement to loan

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

LIPPES MATHIAS LLP

LIPPES MATHIAS LLP

money to Girardi Keese and received payment for same from the Court approved settlement agreements. CAL and DiNardo are not responsible for the conduct of Girardi Keese in its attempt to take additional funds from the Lion Air Clients' trust accounts.

Ultimately, the Complaint does not, and cannot, allege that there was any promise between Plaintiff and DiNardo, express or implied, and this claim must be dismissed with prejudice.

b. *Plaintiff's Claim For Money Had And Received Is Outside The Applicable Statute Of Limitations*

Plaintiff's claim for money had and received must also be dismissed as time barred. The limitations period for bringing a claim of money had and received is two years. *See Murphy*, 74 F. Supp. 3d at 1280 *citing* Cal. Code Civ. Proc. § 339(1) (two-year period for liabilities not founded on written instruments). More specifically, "[a]n action for money had and received is barred, under section 339(1), if not filed within two years after such money was assertedly received by the defendants." *Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir. 1965).

Plaintiff filed its Complaint on July 6, 2022. Doc. 1. Thus, any claim based on moneys received before July 6, 2020 is time barred. While Plaintiff's Complaint does not explicitly state the date that DiNardo purportedly received funds from CAL, the Complaint articulates a timeframe which falls outside of the statute of limitations.

LIPPES MATHIAS LLP

Plaintiff alleges that on January 31, 2020, defendant David Lira signed a letter directing Perkins Coi to pay 50% of the attorneys' fees in the Lion Air Clients' cases directly to CAL. Doc. 1, ¶¶331, 344. Plaintiff alleges that on February 11, 2020 Defendants David Lira and Keith Griffin presented settlement agreements with Boeing to the Lion Air Clients for signature, which provided that Girardi Keese's attorneys' fees would be sent directly to CAL. *Id.* at ¶346. These settlement agreements were signed and approved by the Court. *Id.* at ¶100.

Further, Plaintiff alleges "[a]t the time the checks listed in Table 1 were deposited, both Kamon and the persons signing the checks knew….that the entire amount of attorneys' fees owed to Girardi Keese ***had already been transferred*** directly from Boeing to California Attorney Lending." Doc. 1, ¶109 (emphasis added). The checks in Table 1 range from March 4, 2020 through May 22, 2020. *Id.* at ¶106. Paragraph 110 of the Complaint further states that on March 10, 2020, when check 125017 was signed, Defendants Lira, Girardi, and Kamon all knew that a (redacted) amount of attorneys' fees had already been paid to CAL. Doc. 1, ¶110. Accordingly, from the face of the Complaint, much if not all of the moneys were received by CAL prior to July 6, 2020.

Although the Complaint is vague with respect to the dates that money was purportedly transferred to CAL, one only need to look to the Stipulation for clarification. The Stipulation establishes the dates that Boeing delivered the funds to

- 19 -

CAL with respect to the five families identified as Plaintiff's assignors. *See* Ex. B; Doc. 1, fn. 1. Specifically, with respect to the Bias, Dian, Anice, Multi and Septiana families, the Stipulation provides:

- The Bias Family brought their action pursuant to the caption *Misyadi et al. v. The Boeing Company*, Case Number 1:19-cv-02980. CAL received funds on March 28, 2020 from settlement of this action. *See* Ex. B.

- The Dian Family brought their action pursuant to the caption *Zaenudin et al. v. The Boeing Company*, Case Number 1:19-cv-02987. CAL received funds on March 11, 2020. *See* Ex. B.

- The Anice Family brought their action pursuant to the caption *Kasim et al. v. The Boeing Company*, Case Number 1:19-cv-02982. CAL received funds on March 4, 2020. *See* Ex. B.

- The Multi Family brought their action pursuant to the caption *Warti et al. v. The Boeing Company*, Case Number 1:19-cv-05842. CAL received funds on June 12, 2020. *See* Ex. B.

- The Septiana Family brought their action pursuant to the caption *Damayanti et al. v. The Boeing Company*, Case Number 1:19-cv-02979. CAL received funds on March 30, 2020. *See* Ex. B.

Accordingly, the Stipulation confirms that all the funds for the Lion Air Clients identified in the Complaint as Plaintiff's Assignors were received by CAL well before July 9, 2020.[2] Although the Complaint is silent with respect to the date that CAL purportedly sent funds to DiNardo, the facts alleged create a strong

---

[2] Footnote 1 of the Complaint alleges that Plaintiff was assigned the interests of the Bias, Dian, Anice, Multi and Septiana families. Doc. 1, fn. 1.

LIPPES MATHIAS LLP

inference that some, if not all, of the Lion Air Settlement funds alleged to have been transferred to DiNardo were received prior to July 9, 2020.

Ultimately, Plaintiff's claim for money had and received against DiNardo is not only deficient, but also time barred.

### c. Money Had And Received Is Not A Standalone Cause Of Action In California

Finally, Plaintiff's claim for money had and received must be dismissed because it was improperly pleaded as a standalone cause of action. In California, a "common count is a general pleading which seeks recovery of money without specifying the nature of the claim." *Yes Online Inc. v. G Master Inc.*, 2018 WL 6016281, at *3 (C.D. Cal. Feb. 12, 2018). Money had and received is classified as a common count. *Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 11501, at *4 (N.D. Cal. Jan. 4, 2011). Importantly, however, "a claim for money had and received is not a standalone cause of action." *See Crosbie v. Endeavors Techs., Inc.*, 2009 WL 3464135, at *10 (C.D. Cal. Oct. 22, 2009) (citing *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008)); *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1559–60 (2007).

As money had and received is not a standalone claim, "[w]hen it is used as an alternative way of seeking the same recovery demanded in other causes of action, based on the same facts, the common count must be dismissed if the cause of action upon which it is based is dismissed. *Crosbie*, 2009 WL 3464135, at *10; *see also*

*In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*, 2021 WL 3560783, at *9 (C.D. Cal. Aug. 6, 2021)* ("if stated as an alternative way of seeking the same recovery demanded in a specific claim, only survives if the underlying claim also survives"). In other words, a common count for money had and received must "stand or fall on the viability of plaintiff's other claims." *Berryman*, 152 Cal. App. 4th at 1560.

Here, Plaintiff's common count claim for money had and received is the only cause of action logged against DiNardo. As noted above, a claim for money had and received is only sufficiently pleaded if the other claims survive. As Plaintiff's claim for money had and received falls on the viability of the other claims against DiNardo, and Plaintiff did not allege any other claims against DiNardo—viable or otherwise, Plaintiff's common count of money had and received must be dismissed.

In light of the fact that Plaintiff improperly pleaded money had and received as a standalone cause of action against DiNardo, it must be dismissed in its entirety.

## IV.  Plaintiff Fails to Allege That DiNardo Bears Any Personal Liability For CAL

Plaintiff alleges that CAL, a corporation founded by DiNardo, entered into a loan agreement with Girardi Keese, whereby Girardi Keese would repay its loan through automatic transfers of money obtained following settlement of its clients' cases. As relevant here, Plaintiff seemingly attempts to hold DiNardo personally liable for the purported wrongdoing of CAL by bringing a claim for money had and

received against DiNardo based exclusively on the speculation that CAL may have transferred the Lion Air Settlement money to DiNardo. While the Complaint incorrectly concludes that DiNardo founded CAL, it does not, and cannot, allege that DiNardo has any ownership interest in CAL. Plaintiff attempts to sidestep its obligation to pierce CAL's corporate veil. This shortcut is impermissible and warrants dismissal of Plaintiff's Fifth cause of action.

Federal Courts "apply the law of the forum state in determining whether a corporation is an alter ego" of an individual." *S.E.C. v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey,* 335 F.3d 834 (9th Cir. 2003). CAL is a New York Corporation and New York veil piercing law applies. *Id.*; Doc. 1, ¶33.

"The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Morris v. New York State Dep't of Tax'n & Fin.,* 82 N.Y.2d 135, 140 (1993). The "doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation." *Id.* "Veil-piercing is done with 'extreme[ ] reluctan[ce]'."

- 23 -

*Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.,* 401 F. Supp. 3d 433, 439 (S.D.N.Y. 2018) (citations omitted).

"Under New York law, a party seeking to pierce the corporate veil must generally show that: '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *EED Holdings v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508, 512 (S.D.N.Y. 2005). Both elements must be satisfied. *See TNS Holdings, Inc. v. MKI Sec. Corp.,* 92 N.Y.2d 335, 339 (1998) ("Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance."). The Second Circuit has identified a variety of non-exclusive factors to assist in determining whether an individual exercises complete domination over a corporation, including:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LIPPES MATHIAS LLP

*Shantou Real Lingerie Mfg. Co.,* 401 F. Supp. 3d at 439–40.

Importantly, the Complaint does not allege that DiNardo owned CAL. Of course, the Complaint does not contain these allegations because DiNardo is not the owner of CAL and does not control same.

As Plaintiff fails to allege that DiNardo was an owner, it did not, and cannot, allege that "the owners exercised complete domination of the corporation in respect to the transaction attacked." *EED Holdings,* 228 F.R.D. at 512. In this regard, the Complaint is silent with respect to DiNardo's role within CAL. Simply stated, there are no factual allegations that would warrant disregarding the corporate entity and holding DiNardo personally responsible for CAL.

Plaintiff failed to articulate facts sufficient to sustain a claim for piercing the corporate veil against DiNardo with respect to CAL's agreement with Girardi Keese and it has no grounds to hold DiNardo responsible for the proceeds of that agreement. As Plaintiff's attempt to circumvent the legal distinction between CAL and DiNardo fails, its claim against DiNardo must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Joseph DiNardo respectfully requests that Plaintiff's Complaint be dismissed, with prejudice, in its entirety.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

LIPPES MATHIAS LLP

DATED:      January 23, 2023

**LIPPES MATHIAS LLP**

*s/ Richard M. Scherer, Jr.*
Richard M. Scherer, Jr., Esq. (*pro hac vice*)

And

**HAMRICK & EVANS, LLP**

Jeff W. Poole, Esq. (SBN 291783)


*Attorneys for Defendant Joseph DiNardo*

- 26 -