William E. Brueckner (admitted *pro hac vice*)
wbrueckner@woodsoviatt.com
William F. Savino (admitted *pro hac vice*)
wsavino@woodsoviatt.com
**WOODS OVIATT GILMAN LLP**
1900 Main Place Tower, 350 Main Street
Buffalo, New York 14202
716-248-3200 (T)
716-854-5100 (F)

Sean E. Ponist (SBN 204712)
sponist@ponistlaw.com
**PONIST LAW GROUP, P.C.**
27201 Puerta Real, Suite 300
Mission Viejo, CA 92691
949.420.4650 (T)
858.400.4591 (F)

Attorneys for Defendant California Attorney Lending
II, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDELSON, P.C., an Illinois professional corporation, <br><br> Plaintiff, <br><br> -vs.- <br><br> DAVID LIRA, an individual, KEITH GRIFFIN, an Individual, ERIKA GIRARDI aka ERIKA JAYNE, an Individual, GEORGE HATCHER, an individual, WRONGFUL DEATH CONSULTANTS, a California Corporation, JOSEPH DINARDO, an individual, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation, <br><br> Defendants. | Case No. 2:22-cv-08787-JFW-MAA <br><br> **DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** <br><br> Hearing Date: Monday, February 27, 2023 <br> Hearing Time: 1:30 p.m. <br> Courtroom:  7A |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES TO THIS ACTION AND THEIR ATTORNEY(S) OF RECORD:**

PLEASE TAKE NOTICE that on Monday, February 27, 2023, at 1:30 p.m., in Courtroom 7A of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant California Attorney Lending II, Inc. ("*CAL II*"), will hereby move to dismiss the Complaint filed by Plaintiff Edelson, P.C. ("*Edeleson*"), as it relates to CAL II.

This Motion is following the conference of counsel pursuant to L.R. 7-3, which took place on January 3, 2023, and is made pursuant Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

(1) Plaintiff did not acquire any enforceable claim by its assignment; (2) Plaintiff's claim for "money had and received" is barred by the applicable statute of limitations; (3) Plaintiff's own allegations defeat the plausibility of its claim for "money had and received;" (4) Plaintiff cannot maintain its claim brought pursuant to California Business and Professional Code §17200; (5) Plaintiff's Consumer Legal Remedies Act ("CLRA") claim fails because this action does not involve consumer relations; (6) even if the CLRA applied, Plaintiff knows the settlement agreement is not unconscionable; and (7) Plaintiff cannot be awarded punitive or exemplary damages.

The Motion is based on this Notice of Motion, the attached Memorandum of Points and

2

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA

Authorities, the concurrently filed Declaration of Paul Cody, with Exhibits (the "*Cody Declaration*"), all other matter of which this Court may take judicial notice, the pleadings, files and records in this action, and on such other argument as may be heard by this Court.

DATED: January 23, 2023

**WOODS OVIATT GILMAN LLP**

By: _/s/ William E. Brueckner_
William F. Savino (admitted *pro hac vice*)
William E. Brueckner (admitted *pro hac vice*)

**PONIST LAW GROUP, PC**

By: _/s/ Sean Ponist_
Sean E. Ponist

*Counsel for Defendant California Attorney Lending II, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... 6

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 10

    I.     INTRODUCTION........................................................... 10

    II.    STATEMENT OF ISSUES............................................. 10

    III.   FACTUAL PROCEDURE AND BACKGROUND................... 11

    IV.   LEGAL ARGUMENT ................................................... 15

          A.    PLAINTIFF'S CLAIMS AGAINST CAL II
                ARE NOT PLAUSIBLE ON THEIR FACE
                AND MUST BE DISMISSED PURSUANT TO FRCP
                12(B)(6).......................................................... 17

                1.    Plaintiff Did Not Acquire Any Enforceable
                            Claim by Its Assignment. ......................... 18

                2.    Plaintiff Cannot Maintain Its Claim
                            for Money Had and Received................................. 23

                      a.    This Claim is Barred by the Statute
                                of Limitations. ................................. 23

                      b.    Plaintiff's Own Allegations Defeat
                                  the Plausibility of Its Claim for Money
                                Had and Received........................................... 24

          B.    PLAINTIFF CANNOT MAINTAIN ITS CLAIM
                BROUGHT PURSUANT TO CALIFORNIA
                  BUSINESS AND PROFESSIONAL CODE §17200. ...... 26

          C.    EDLESON'S CLRA CLAIM AGAINST
                 CAL II FAILS.......................................................... 29

                  1.    This Action Does Not Involve
                              Consumer Relations................................. 29

                  2.    Even If the CLRA Applied, Edelson
                            Knows the Settlement Agreement is Not
                            Unconscionable. ......................................... 30

4

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA

D.    EDELSON CANNOT BE AWARDED
PUNITIVE OR EXEMPLARAY DAMAGES. ................    32

V.    CONCLUSION ...............................................................................    33

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA

# TABLE OF AUTHORITIES

**Cases:**

**Page(s)**

*American Surety Co. v. Bank of California*,
    133 F.2d 160 (9th Cir. 1943).......................................................................*21, 22*

*AMCO Ins. Co. v. All Solutions Ins. Agency, LLC*,
    244 Cal. App. 4th 883 (2016)...............................................................................*22*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................*passim*

*Avidor v. Sutter's Place, Inc.*,
    212 Cal. App. 4th 1439 (2013).......................................................................*23, 25*

*Becker v. Wells Fargo Bank, N.A., Inc.*,
    2011 U.S. Dist. LEXIS 29687 (E.D. Cal. Mar. 22, 2011)......................*29, 30*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................*17, 18, 26, 31*

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012)...............................................................................*11*

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999)...........................................................................*11*

*Cadle Co. v. Schlichtmann*,
    267 F.3d 14 (1st Cir. 2001)..................................................................................*29*

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999).........................................................................................*27*

*Christopher v. Harbury*,
    536 U.S. 403 (2002).............................................................................................*18*

*Cleveland v. Policy Management Systems Corp.*,
    120 F.3d 513 (5th Cir 1997)................................................................................*32*

*Consumer Solutions Reo, LLC v. Hillery*,
    658 F. Supp. 2d 1002 (N.D. Cal. 2009)............................................................*30*

*Core Funding Grp., LLC v. McDonald*,
    No. L-05-1291, 2006-Ohio-1625 (Ohio Ct. App. Mar. 31, 2006)...............*29*

*Counsel Fin. Servs., L.L.C. v. Liebowitz*,
    No. 13-12-00103-CV, 2013 Tex. App. LEXIS 9252
    (Tex. Ct. App. July 25, 2013)............................................................................*28*

*Cnty. of Orange v. United States Dist. Court*,
  784 F.3d 520 (9th Cir. 2015)........................................................................*17*

*CRS Recovery, Inc., v. Laxton*,
  600 F.3d 1138 (9th Cir. 2010)......................................................................*17*

*Davis v. HSBC Bank*,
  691 F.3d 1152 (9th Cir. 2012)......................................................................*11*

*Erickson v. Pardus*,
  551 U.S. 89 (2007)........................................................................................*18*

*Farmers Ins. Exchange v. Zerin*,
  53 Cal. App. 4th 445 (1997).........................................................................*24*

*French v. Orange County Inv. Corp.*,
  125 Cal. App. 587 (1932).............................................................................*33*

*Garamendi v. Mission Ins. Co.*,
  131 Cal. App. 4th 30, (2005)........................................................................*17*

*Gasperini v. Ctr. for Humanities, Inc.*,
  518 U.S. 415 (1996)......................................................................................17

*Goldman v. Lombardi*,
  135 Cal. App. 2d Supp. 851 (1955).........................................................*23, 24*

*Granata v. Broderick*,
  446 N.J. Super. 449 (2016)...........................................................................*28*

*Hamilton Capital VII, LLC v. Khorrami, LLP*,
  650791/2015, 2015 N.Y. Misc. LEXIS 2954
  (N.Y. Sup. Ct. Aug. 17, 2015)......................................................................*28*

*Hartman v. Gilead Scis., Inc.*,
  536 F.3d 1049 (9th Cir. 2008)......................................................................*29*

*Heer v. North Moore St. Developers, L.L.C.*,
  140 A.D.3d 675 (N.Y. App. Div. 1st Dep't 2016)........................................*28*

*Hurtado v. Superior Court*,
  11 Cal. 3d 574 (1974)...................................................................................*17*

*Jackson v. County of Los Angeles*,
  60 Cal. App. 4th 171 (1997).........................................................................*32*

*Johnson v. Fed. Home Loan Mortg. Corp.*,
  793 F.3d 1005 (9th Cir. 2015)......................................................................*11*

7

*Landers v. Quality Communs, Inc.,*
    771 F.3d 638 (9th Cir. 2015)................................................................*18, 28*

*Meyers v. Bank of America Nat'l Trust & Sav. Asso.,*
    11 Cal. 2d 92, 96-97 (1938)...............................................................*22*

*Murphy* v. *Allstate Ins. Co.,*
    17 Cal. 3d 937 (1976)........................................................................*33*

*Murphy v. Am. Gen. Life Ins. Co.,*
    74 F. Supp. 3d 1267 (C.D. Cal 2015)...............................................*23*

*Nishimatsu Constr. Co. v. Houston Nat'l Bank,*
    515 F.2d 1200 (5th Cir. 1975)..........................................................*11*

*Onions Etc. Inc., v. Z&S Fresh, Inc.,*
    603 Fed. Appx. 567 (9th Cir. 2015) ...............................................*19*

*Orloff v. Metropolitan Trust Co.,*
    17 Cal. 2d 484 (1941).......................................................................*23, 24*

*Paulsen v. CNF Inc.,*
    559 F.3d 1061 (9th Cir. 2009)..........................................................*17*

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
    998 F.2d 1192 (3rd Cir. 1993)..........................................................*11*

*People* v. *Superior Court,*
    9 Cal. 3d 283 (1973).........................................................................*33*

*Pnc Bank v. Berg,*
    No. 94C-09-208-WTQ, 1997 Del. Super. LEXIS 19
    (Del. Super. Ct. Jan. 31, 1997) .........................................................*29*

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal. App. 4th 899 (2015).............................................................*32*

*Sterling Sav. Bank v. Thornburgh Resort Co.,*
    694 Fed. Appx. 568 (9th Cir. 2017) ................................................*19*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)...........................................................................*11*

*Tracht Gut, LLC, v. L.A. Cnty. Treasurer & Tax Collector,*
    836 F.3d 1146 (9th Cir. 2016)...........................................................*25, 29, 32*

*U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC,*
    519 F. Supp. 2d 515 (E.D. Pa. 2007).................................................*28*

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA

*Weiss v. Marcus*,
   51 Cal. App. 3d 590 (1975) ........................................................*24, 25*


**Other Authorities:**

5 C. Wright & A. Miller, Federal Practice and Procedure §1216
   (3d ed. 2004) .....................................................................................18

California Business and Professional Code §17200 .........................................26, 27

California Civil Code §1761(a) ...............................................................30

California Civil Code §1761(b) ...............................................................30

California Civil Code §1770(a)(19)...........................................................30

California Code of Civil Procedure §339(1)...................................................23, 24

Consumer Legal Remedies Act §1770 ......................................................29

Consumer Legal Remedies Act §1780 ......................................................29

Federal Rules of Civil Procedure 8(a)(1)...................................................13

Federal Rules of Civil Procedure 8(a)(2)...................................................18

Federal Rules of Civil Procedure 10........................................................13

Federal Rules of Civil Procedure 12(b)(6) .................................................*passim*

Restatement (Third) of the Law of Suretyship and Guaranty...........................19, 20

Rules of Professional Conduct 5.4(a) ......................................................27

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

Defendant California Attorney Lending II, Inc. ("*CAL II*"), brings this Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims asserted against CAL II in the Complaint ("*Complaint*") filed in this Action.

Initially, Plaintiff Edelson, P.C. ("*Plaintiff*" or "*Edelson*") has no standing to bring the claims asserted in the Complaint, because it asserts claims solely as an assignee, and the claims of its assignors have been fully satisfied.  Furthermore, the money had and received claim is both time barred and legally deficient.  Plaintiff's claim under the California Consumer Legal Remedies Act ("*CLRA*") against CAL II fails since this action does not involve any consumer relations, and, finally, Plaintiff cannot contend that the CLRA claims against CAL II include an unconscionable agreement.

Accordingly, this Court should grant an Order, pursuant to FRCP 12(b)(6), dismissing Plaintiff's Complaint against CAL II in its entirety and with prejudice.

## II.      STATEMENT OF ISSUES

This motion presents the following issue:

- ▪ Should the claims against CAL II be dismissed where, as here, the allegations are contradicted by the documents referenced and relied upon in the Complaint, and are otherwise insufficient to state a cause of action under Rule 12(b)(6)?

## III.   FACTUAL AND PROCEDURAL BACKGROUND

CAL II is a fully licensed and authorized lender in the State of California. *Cody Declaration*, at ¶2.

CAL II provides loans and working capital lines of credit for plaintiffs' law firms located in California that are in the business of prosecuting contingency cases. *Id.,* at ¶3.

Starting in 2011, CAL II provided a working line of credit to Girardi Keese, a plaintiffs' law firm based in Los Angeles, California, as evidenced by certain promissory notes, security agreements, guaranties, and other loan documentation executive in connection therewith (collectively, the "*Loan Agreements*").  *Cody Declaration*, at ¶¶4 - 5 and Exhibit A].[1]

---

[1]   The Loan Agreements are referenced and relied upon in the Complaint in, *inter alia*, paragraphs 93, 307 – 309, and 341 – 43.  A court should not accept as true allegations which are contradicted by documents referenced in the complaint. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007-1008 (9th Cir. 2015).  Likewise, a court may consider extrinsic evidence not attached to complaint if the document's authenticity is not reasonably contested and plaintiff's complaint relies on it. *Id.*; see also, *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-1207 (5th Cir. 1975).
Where, as here, a plaintiff fails to attach integral documents to its complaint, a defendant may attach to its Rule 12(b)(6) motion any such documents referred to or relied upon in the complaint to show that they do not support plaintiff's claim. See *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280, n. 16 (11th Cir. 1999); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) [court ruling on motion to dismiss must consider entire complaint and other sources incorporated by reference as well as judicially noticeable matters]; see also, *Davis v. HSBC Bank*, 691 F.3d 1152, 1159-1160 (9th Cir. 2012).
The foregoing prevents "a plaintiff with a legally deficient claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

CAL II's Loan Agreements with Girardi Keese included an absolute obligation to repay the borrowed funds from whatever source derived, as they did with CAL II's other borrowers. *Id.*, ¶10. The Loan Agreements did not require Girardi Keese to share legal fees with CAL II. *Id.*, ¶¶10 – 11. Rather, the Loan Agreements granted CAL II a collateral security interest in the contractual rights, including attorneys' fees both earned and not yet earned, and other accounts receivable owed to Girardi Keese. *Cody Declaration*, ¶¶ 5 – 7.

More particularly, the most recent security agreement executed by Girardi Keese in favor of CAL II, the Fourth Amended and Restated Security Agreement (the "*Security Agreement*"), provides, *inter alia*:

> The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note) whether or not yet earned by performance and the proceeds thereof, including Net Fees and Expenses (as defined in the Note).

*Cody Declaration*, Exhibit A, p. 27.

CAL II's security interest was duly perfected by the filing of a UCC-1 financing statement in the Office of the California Attorney General against Girardi Keese on July 6, 2011, designated as Filing No. 11-7275806299 (as amended and

continued by UCC-3 financing statements to the present.)[2]  *Cody Declaration*, at ¶7 and Exhibit B.

Plaintiff's Complaint in this action was filed on July 6, 2022.[3]  *Docket No*. 1. The Complaint alleges that Plaintiff served as co-counsel to Girardi Keese in the litigation arising from the tragic crash of Lion Air Flight JT 610 (the "*Lion Air Litigation*"). *Id*., ¶96. The Lion Air Litigation was brought, and is pending, in the Northern District of Illinois, where Plaintiff maintains its primary place of business.  *Docket No. 1*, ¶¶24, 96. The clients represented by Girardi Keese, and purportedly by Plaintiff, in the Lion Air Litigation (the "*Lion Air Families*" or "*Lion Air Clients*") settled their cases, and those settlements were funded.  *Docket No. 1*, ¶¶ 100, 101.

As is customary, the payment of the contingency fees due and earned by plaintiffs'

---

[2]   The financing statement, as amended, describes the collateral as "[a]ll right, title and interest in all Goods (including Equipment, Fixtures, and Inventory) Money (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property, and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Product and other Proceeds of, all of the foregoing … ."  *Cody Declaration*, Exhibits A and B.

[3]   The Complaint utterly disregards the basic rules of federal pleading.  A complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P*. 8(a)(1). Each allegation must be simple, concise, and direct. Each claim must be stated in numbered paragraphs, and each numbered paragraph limited as far as practicable to a single set of circumstances. *Fed. R. Civ. P*. 10. Plaintiff's convoluted Complaint is neither short nor plain, and it does not establish that Plaintiff is entitled to any relief against CAL II.

counsel – here, the Lion Air Clients executed Attorney Representation Agreements designating Girardi Keese as counsel – were deducted from the Lion Air Clients' gross recoveries. Pursuant to Girardi Keese's instruction, defense counsel in the Lion Air Litigation distributed a part of Girardi Keese's earned contingency fee – the accounts receivable in which CAL II held an undisputed duly perfected security interest – directly to CAL II. *Docket No. 1* at ¶310; *Request for Judicial Notice*, Exhibit 1.  As such, CAL II only received a portion of the gross recovery due to Girardi Keese in connection with its representation of the Lion Air Clients – not any Lion Air Clients' net proceeds.  *Docket No 1,* ¶101.

Plaintiff's malpractice insurer ultimately paid the Lion Air Families the net proceeds of their settlements in the Lion Air Litigation. *Request for Judicial Notice*, Exhibit 2 and 3. By its Complaint, Plaintiff – as assignee of the Lion Air Families – demands recovery from CAL II, asserting three legal theories:  (1) "money had and received" (Fifth Cause of Action); (2) unlawful business practice under a California consumer protection statute (Seventh Cause of Action); and (3) a claim brought under California's Consumers' Legal Remedies Act (Eighth Cause of Action).  Though Plaintiff's make-whole payment to the Lion Air Families totaled only $2,500,000, *Request for Judicial Notice*, Exhibit 2 and 3, Plaintiff's Complaint incredulously demands judgment against nine different defendants for $22,096,000 in compensatory damages, and another $55,000,000 in punitive or exemplary damages.  *Docket No. 1*, at pp. 59 – 60.

Whatever effectiveness the Complaint may have in drawing the attention of the

Hollywood tabloids, it is entirely inadequate to plead a cognizable legal theory against CAL II in federal court. The brazen disingenuity of Edelson's claims against CAL II is shocking. Edelson devotes 60 pages of crime-story hyperbole to some alleged "undisclosed conspiracy," casting CAL II as a shadowy functionary and co-conspirator in a family crime syndicate.  But, hundreds of paragraphs into its tale, Edelson lets slip a damning truth: the funds paid to CAL II were not secretly misappropriated.  Instead, according to Plaintiff, the direct payments to CAL II were expressly disclosed to the Lion Air Families, and consented to by them (as a term of the very settlement agreements that entitled the Lion Air Families to any funds).  *Docket No. 1*, ¶¶ 310, 346.  Almost certainly, as co-counsel to the settling Lion Air Families, and in alleging as much in its Complaint, Edelson itself knew of these direct payments.  Indeed, as Edelson avers, in most instances, the payments were approved by Court order!  *Docket No. 1*, ¶100. Notwithstanding these facts acknowledged by its own allegations, Edelson's Complaint strains to pervert entirely transparent, reasonable, and ordinary commercial transactions into multi-million dollar thefts.

CAL II brings this Motion to Dismiss the Complaint as to CAL II.

## IV.   LEGAL ARGUMENT

Three key concessions are fatal to Plaintiff's claims against CAL II.

*First*, Plaintiff acknowledges – and the documents submitted in support of this Motion establish – that there is nothing sinister about CAL II's general operations or its role as a secured lender to Girardi Keese. *Docket No. 1* ¶93 ("in exchange for the

additional loans, [Girardi Keese] agreed that CAL II would receive 50% of the attorneys' fees from various cases when they settle, including from the Lion Air Clients.")

*Second*, Plaintiff concedes that it is a mere assignee of the Lion Air Clients, see, *e.g. Docket No. 1* ¶22, and Plaintiff has represented to the Court in related litigation that it has made the Lion Air Clients whole with respect to the funds it alleges were paid to CAL II. *Request for Judicial Notice*, Exhibits 2 and 3 (Edelson represents that "the Assignment Agreement is effective and that wire transfers in the amounts set forth in that Agreement have been sent to the Indonesian bank accounts of [the Lion Air Clients].")  Because the Lion Air Clients have been made whole, they have no enforceable claim to assign to Edelson.

*Third*, Plaintiff's allegations provide that – before any funds were directed to CAL II (or any other recipient arising out of the settlement of the Lion Air Clients' claims) – the Lion Air Families were advised and consented to CAL II's receipt of <u>only</u> that portion of the settlement "representing Girardi Keese's portion of attorneys' fees." *Docket No. 1* at ¶¶ 310 and 346. The consent, according to Edelson, was contained in the Lion Air Clients' settlement agreements, many of which were approved by the Court overseeing those cases. *Docket No. 1*, at 100.  As a result, the Lion Air Families – whose rights Plaintiff litigates in this action – acknowledged Girardi Keese's right to its earned contingency fee, and have no meritorious basis to object to CAL II's exercise of its rights as Girardi Keese's perfected secured creditor, and its receipt of some portion of its collateral.

For the reasons explained hereafter, Plaintiff's claims are fatally-deficient, and must

be dismissed.[4]

### A. PLAINTIFF'S CLAIMS AGAINST CAL II ARE NOT PLAUSIBLE ON THEIR FACE AND MUST BE DISMISSED PURSUANT TO FRCP 12(B)(6).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. See, *Fed. R. Civ. P*. 12(b)(6).  In assessing legal sufficiency, courts are bound to apply the pleading standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). That is, "a complaint

---

[4] In this diversity action, this Court should apply federal procedural rules and the substantive law of the State of California.  "Under the Erie Doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Cnty. of Orange v. United States Dist. Court*, 784 F.3d 520, 523 – 24 (9th Cir. 2015), quoting, *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427 (1996). The forum state's choice of law rules control which state's substantive law and rules of decision apply. *CRS Recovery, Inc., v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010).

California's choice of law rules are very straightforward: "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010), citing *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("Under California's choice of law rules, California will apply its own rule of decision unless a party invokes the law of a foreign state that will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it."); *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 21 (2005) ("In order to persuade a California court to apply the law of another forum, the proponent of the other forum's laws must invoke the law of the foreign jurisdiction, show that it materially differs from California law, and demonstrate how applying that law will further the interest of the foreign jurisdiction. Otherwise, a California court will apply its own rules of decision.").

Accordingly, this Court must evaluate the Complaint using federal procedural rules and the substantive law of the forum state – the State of California.

---

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Landers v. Quality Communs, Inc.*, 771 F.3d 638, at 679 (9th Cir. 2015).  In evaluating whether a complaint states a plausible claim for relief, a court must rely on "judicial experience and common sense" to determine whether the factual allegations plausibly give rise to an entitlement to relief. *Id.*, at 679.

Of course, in addressing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all of plaintiff's factual allegations.  See, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Erickson v. Pardus*, 551 U.S. 89, 93 – 94 (2007). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A pleading that offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*, citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 (3d ed. 2004).  Federal Rule of Civil Procedure 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### 1.    Plaintiff Did Not Acquire Any Enforceable Claim by Its Assignment.

Plaintiff's champertous effort to acquire (and multiply) the Lion Air Families' claims is not legally effective in the State of California. Accordingly, Plaintiff may not

maintain this action, and the Complaint must be dismissed in its entirety.

The Restatement (Third) of the Law of Suretyship and Guaranty (the "*Restatement*") has been repeatedly cited by the federal courts in this Circuit (and other Court across the nation) as an authoritative compendium regarding the common law of surety. See e.g., *Sterling Sav. Bank v. Thornburgh Resort Co.*, 694 Fed. Appx. 568 (9th Cir. 2017); *Onions Etc. Inc., v. Z&S Fresh, Inc.*, 603 Fed. Appx. 567, 571 (9th Cir. 2015). The Restatement explains that surety status is obtained as a matter of law from express or implied contractual relationships among parties to a transaction, and that surety status defines the rights among those parties. For example, Section 1 of the Restatement provides an explanation of those circumstances under which suretyship status arises. Essentially, the paradigm is this: when two parties (A and B) are both obligated to answer to an obligee, but as between A and B, the obligation ought to be fulfilled by A, then B has suretyship status.

> According to subsection (1), whenever, pursuant to contract, an obligee has recourse against a person or its property with respect to the obligation of another person to that obligee, the former has suretyship status and the rules of this Restatement apply to the relationship among those persons and the obligee. This is the case, as subsection (3)(a) indicates, regardless of the form of the transaction that brings about the relationship. In the bulk of cases, the existence of that relationship will be easy to discern from the contracts creating it and from labels such as "guaranty" or "surety bond" given to those contracts by the parties. In many cases, however, the relationship among the parties is substantively and economically equivalent, yet that may not be obvious from the contracts and the labels given to them. … All of these transactions, regardless of their form, share the same essential core -- the secondary obligor is answerable to the obligee in some way with respect to a duty the cost of which, as between the principal

obligor and the secondary obligor, ought to be borne by the principal obligor. In other words, substance rather than form determines whether suretyship status rights attach.

*Restatement §1 (Comment b).*

Here, the Complaint alleges that Edelson and Girardi Keese were co-counsel to the Lion Air Families. *Docket No.* 1 ¶¶95 – 96. As such, they both owed fiduciary duties to the Lion Air Families, including the duty to ensure that the settlement proceeds were delivered to them.  However, under the circumstances as alleged in the Complaint, it is clear that Girardi Keese bore the primary responsibility to the Lion Air Families and Edelson's was merely secondary.  Thus, under the long-established rules recognized in the Restatement, Edelson obtained surety status with respect to the Lion Air Families.

Suretyship status results in the surety being able to exercise defined and important rights as against the obligees (the Lion Air Families, in this example), the primary obligor (Girardi Keese), and third parties.  *Id., (Comment a)* ("suretyship status gives the secondary obligor a significant set of rights … As the term 'suretyship status' suggests, the secondary obligor obtains these rights as a matter of status in the transaction rather than by express agreement.") Among those rights, generally speaking, is a right of subrogation. See, *Restatement* §27.

Plaintiff brings its claims only as an assignee – not as a subrogee.  *Docket No. 1,* ¶22 ("Plaintiff Edelson PC, as assignee of the Lion Air Clients, brings this lawsuit against Defendants"). This distinction is absolutely critical, because the claims that were assigned to Plaintiff had been satisfied in full prior to their assignment.  *Request for Judicial*

*Notice*, Exhibits 2 and 3.  Because no enforceable claim existed to be assigned, there is no claim that can support recovery for Plaintiff.

This rule – and the critical distinction between subrogation and assignment – is carefully explained in *American Surety Co. v. Bank of California*, 133 F.2d 160, 162 – 65 (9th Cir. 1943).  There, a dishonest employee forged a number of checks and misappropriated the employer's funds.  *American Surety*, 133 F.2d at 161. The employer's surety paid the employer's losses, took an assignment of the employer's claims, and then brought suit against the employer's bank, alleging that the bank should not have paid the forged checks.  *Id*.

The Ninth Circuit noted that under California law, subrogation claims against third parties (as opposed to claims against the principal) are only available to a claimant who is favored by the equities as against the third party.  Because the surety had undertaken an express agreement to pay the employer's losses arising from employee dishonesty, the equities did not favor the surety as against the bank, who had no actual knowledge of the employee's defalcation (even if the bank might have been charged with constructive notice of the forgery).  *Id*., at 164.

Because the surety had no subrogation rights, its rights as against the bank were limited to rights acquired by the assignment. The Ninth Circuit determined those assignment rights were ineffective to permit recovery by the assignee:

> When (Plaintiff) paid (the assignor), the right of (Plaintiff) to pursue its claim against (Defendant) was destroyed as (the assignor) would not be permitted a dual recovery.  Therefore, there was in existence no

21

enforceable claim against (Defendant) which (assignor) could assign to (Plaintiff), and which would support recovery in favor of (Plaintiff). … Assignment necessarily contemplates the continued existence of the debt or claim assigned.

*American Surety Co. v. Bank of California*, 133 F.2d 160, 164 – 65 (9th Cir. 1943); accord, Meyers v. Bank of America Nat'l Trust & Sav. Asso., 11 Cal. 2d 92, 96-97 (1938).

The American Surety rule has continuing vitality. "[W]hen the assignee-assignor relationship is a potential subrogee-subrogor relationship under the doctrine of equitable subrogation, that assignee-assignor relationship is subject to the principles of equitable subrogation." *AMCO Ins. Co. v. All Solutions Ins. Agency, LLC*, 244 Cal. App. 4th 883, 901 (2016).

Here, Plaintiff has paid the Lion Air Families' claim in full prior to taking the assignment of their claims. *Request for Judicial Notice*, Exhibits 2 and 3. Like the payment to the employer in American Surety, Plaintiff's payment to the Lion Air Families voided the Lion Air Families' right to pursue their claims, as the assigned claims were satisfied, and no longer continued to exist. Therefore, there is no enforceable claim that was assigned to Plaintiff, and its efforts to enforce those claims in this action are legally ineffective.

The Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

2.   **Plaintiff Cannot Maintain Its Claim for Money Had and Received.**

The Complaint's Fifth Cause of Action alleges that CAL II is liable to Plaintiff on the theory of "money had and received." *Docket No. 1* ¶¶306 – 316. This claim cannot be maintained because it is untimely, and further because, according to Edelson's own assertions, the Lion Air Families consented to Girardi Keese's receipt of its earned contingency fee. That consent precludes any allegation that the sums received by CAL II were "for the use of" the Lion Air Families.

a.   **This Claim is Barred by the Statute of Limitations.**

Under California law, a claim for money had and received arises when the defendant becomes indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of plaintiff. *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013). The limitations period for a claim of money had and received is two years. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1280 (C.D. Cal 2015) (citing *Cal. Code Civ. Proc*. 339(1). An action for money had and received is barred, under Section 339(1), if not filed within two years after such money is alleged to have been received by the defendants. See, *Goldman v. Lombardi*, 135 Cal. App. 2d Supp. 851, 852 (1955); *Orloff v. Metropolitan Trust Co.*, 17 Cal. 2d 484, 489 (1941).

The Complaint alleges that settlement funds earmarked by Plaintiff's assignors were transferred no later than June 9, 2020. *Docket No. 1* ¶101. And the Complaint acknowledges that when those funds were transferred, a portion of each Girardi Keese

contingency fee earned in respect of such settlement was wired directly to CAL II.  _Id._, at

¶310.[5]

Thus, to be timely, Plaintiff's claims were to be filed within two years after June 9,

2020, when CAL II received the last transfer of the funds at issue in this litigation.  See,

_Cal. Code Civil Proc_. 339(1); _Goldman v. Lombardi_, supra.  This action was not filed

until July 6, 2022, and accordingly, Plaintiff's Fifth Cause of Action is untimely.

**b.  Plaintiff's Own Allegations Defeat the Plausibility**
**of Its Claim for Money Had and Received.**

To properly plead a claim for money had and received under California law, a

plaintiff must allege: 1) that defendant is indebted to plaintiff in a certain sum; and 2) that

the indebtedness is for money had and received by defendant for use of plaintiff.  _Farmers_

_Ins. Exchange v. Zerin,_ 53 Cal. App. 4th 445, 460 (1997).

The claim is viable "wherever one person has received money which belongs to

another, and which in equity and good conscience should be paid over to the latter."

_Weiss v. Marcus_, 51 Cal. App. 3d 590, 599 (1975). A plaintiff must prove that the

defendant received money intended to be used for the benefit of the plaintiff, that the

money was not used for the plaintiff's benefit, and that the defendant has not given the

---

[5]    There is no suggestion anywhere in the Complaint that Girardi Keese's repayment
of the funds loaned to it by CAL II was the result of a mistake, or that any person
involved in this litigation had an imperfect understanding of the reasons why it
would be paid.  Indeed, the Complaint explains that the Lion Air Families executed
settlement agreements that recognized Girardi Keese's entitlement to its fee, and
that most of the settlement agreements were approved by the Court overseeing the
Lion Air Families' claims.  _Docket No. 1_, ¶¶ 310, 346.

money to the plaintiff. *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013).

In light of the allegations in its own Complaint, Plaintiff cannot in any manner claim that the money received by CAL II belonged to the Lion Air Families and should "in equity and in good conscience" be returned to them. *Weiss v. Marcus*, 51 Cal. App. 3d at 599. This is because funds received by CAL II were not only specifically designated as Girardi Keese's fees, but also, as the Complaint itself alleges, by the very terms of the settlement agreements resolving their claims, the Lion Air Families consented to Girardi Keese's receipt of the contingency fee it earned in representing those families, and agreed that a portion of that fee could be paid directly to CAL II. *Docket No. 1*, ¶¶ 310, 346.

Edelson clumsily attempts to remedy this defect by claiming that "Girardi Keese forfeited any claim of entitlement to attorneys' fees from the Lion Air Clients by stealing their money." *Docket No. 1*, ¶313.[6]  This ignores Edelson's specific factual allegations regarding the timing and nature of the payment to CAL II, and is "no more than a legal conclusion" which is "not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 679; *Tracht Gut, LLC, v. L.A. Cnty. Treasurer & Tax Collector*, 836 F.3d 1146, 1150 – 51 (9th Cir. 2016).

As the Complaint proclaims, neither CAL II nor Girardi Keese received any money

---

[6]  Edelson also claims that "(t)he entire amount of the settlement agreements with Boeing were intended to be used for the benefit of the Lion Air Clients, either as a (*sic*) cash or as a payment for the attorneys' fees and other costs required to obtain that cash." *Docket No. 1*, ¶311.  In that allegation, Edelson concedes the legitimacy of payment of the Lion Air Families attorneys' fees – the predicate upon which CAL II was paid.

relating to the Lion Air Families until after those families had agreed that Girardi Keese had earned a fee, and consented to the payment of a portion of that fee to CAL II. *Docket No. 1*, ¶¶310, 346. Therefore, as a practical tautology, the funds transferred to CAL II could not have amounted to any "theft" of funds due to the Lion Air Families: those funds CAL II received consisted of acknowledged earned fees only, and they were received prior to the time Girardi Keese possessed the settlement proceeds and could direct them – or misdirect them – anywhere. Thus, Edelson's conclusory allegations are inadequate to "raise its right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Edelson's Fifth Cause of Action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B.  PLAINTIFF CANNOT MAINTAIN ITS CLAIM BROUGHT PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONAL CODE §17200.

Edelson's Seventh Cause of Action seeks restitution and disgorgement of CAL II's profits, *Docket No. 1*, ¶337, based upon the allegation that Girardi Keese's repayment of the loans made by CAL II constitutes an illegal fee sharing agreement.  According to the Complaint, "It is unlawful for an attorney or law firm to share attorneys' fees with a non-lawyer. California Attorney Lending is not an attorney or a law firm and its CEO Paul Cody is not licensed to practice law in any jurisdiction." See, e.g., *Docket No. 1*, ¶¶ 329, 330. This over-simplified argument is, frankly, non-sensical, and the Seventh Cause of Action must be dismissed.

California's Unfair Competition Law (the "*UCL*") is codified in Business and

Professional Code Section 17200.  The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Business & Professional Code* §17200. By proscribing "any unlawful" business act or practice, the UCL borrows rules set out in other laws and makes violations of those rules independently actionable. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, at 180 (1999).

With exceptions not applicable here, Rule 5.4(a) of the Rules of Professional Conduct makes it illegal for lawyers to share fees with non-lawyers.[7] But there is nothing in CAL II's creditor relationship with Girardi Keese that constitutes "fee sharing" prohibited by the Rules.  This reality is expressly recognized in Comment B to Rule 5.4 of the Rules of Professional Conduct:

> Paragraph (a) … does not prohibit payment to a nonlawyer third-party for goods and services provided to a lawyer or law firm; however, the compensation to a nonlawyer third-party may not be determined as a percentage or share of the lawyer's or law firm's overall revenues or tied to fees in particular cases or legal matters.[8]

The Complaint even concedes that the payments made to CAL II were payments made to Girardi Keese's lender, in repayment of loans made to Girardi Keese. *Docket No. 1*, ¶93.  Repayment of a valid and binding loan obligation does not constitute fee sharing –

---

[7]   See, *Rules of Professional Conduct* 5.4(a) ("A lawyer or law firm shall not share legal fees directly or indirectly with a nonlawyer or with an organization that is not authorized to practice law …")

[8]   https:www.calbar.ca.gov/portals/0/documents/rules/Rule_5.4.pdf (accessed January 19, 2023).

even if fees earned are the source of repayment.  True to form, Edelson mischaracterizes the loans in shady terms – that the repayment terms required the firm to pay 50% of all its fees in covered cases.  *Id*.  But indisputable terms of the loan agreements executed by Girardi Keese make clear that was not the Firm's obligation. See, *Cody Declaration*, ¶11 and Exhibit A. Girardi Keese's agreements with CAL II were absolute and unconditional, and required the firm to repay the entire amount borrowed, together with interest at the applicable rate. *Id*. The payment obligation owed to CAL II was in no way determined as a percentage or share of Girardi Keese's overall fees, nor was the obligation tied to fees in any particular case.  *Id*.

In evaluating Edelson's fee sharing argument, this Court must rely on "judicial experience and common sense" to determine whether the factual allegations plausibly give rise to an entitlement to relief.  *Landers v. Quality Communs., Inc*., 771 F.3d at 679. Common sense dictates that loan repayment terms that require the absolute and unconditional repayment of a fixed amount do not amount to "fee sharing," and pose no risk of control over the borrower.  Every court that has addressed the issue has held that it is not a violation of attorney ethics rules or public policy for a law firm to grant to a lender a security interest in the law firm's right to payment of future legal fees.[9]

---

[9]  *See, e.g., Granata v. Broderick*, 446 N.J. Super. 449, 474-78 (2016); *Heer v. North Moore St. Developers, L.L.C.*, 140 A.D.3d 675, 676 (N.Y. App. Div. 1st Dep't 2016); *Hamilton Capital VII, LLC v. Khorrami, LLP*, 650791/2015, 2015 N.Y. Misc. LEXIS 2954, at *4-5 (N.Y. Sup. Ct. Aug. 17, 2015); *Counsel Fin. Servs., L.L.C. v. Liebowitz*, No. 13-12-00103-CV, 2013 Tex. App. LEXIS 9252, at *6-9 (Tex. Ct. App. July 25, 2013); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 518-23,

28

The Ninth Circuit has recognized that this Court "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Hartman v. Gilead Scis., Inc.,* 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, it is flatly contradicted by the terms of the agreement referenced.  Edelson's Seventh Cause of Action is based on an allegation that is "no more than a legal conclusion" and is "not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 679;  *Tracht Gut, LLC, v. L.A. Cnty. Treasurer & Tax Collector*, 836 F.3d 1146, 1150 – 51 (9th Cir. 2016).  Accordingly, because it does not state a plausible legal claim, it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C.   EDELSON'S CLRA CLAIM AGAINST CAL II FAILS.

### 1.   This Action Does Not Involve Consumer Relations.

Edelson's eighth claim, brought under Sections 1770 and 1780 of the CLRA, fails because the CLRA is wholly inapplicable to CAL II's business loan to Girardi Keese.

The CLRA makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or [that] results in the sale or lease of goods or services to any consumer." *Becker v. Wells Fargo Bank, N.A., Inc.,* No. 2:10-CV-02799 LKK, 2011 U.S. Dist. LEXIS 29687, at *13 (E.D. Cal. Mar. 22, 2011).  "Goods" are defined as "tangible chattels bought or leased for

527-29 (E.D. Pa. 2007); *Core Funding Grp., LLC v. McDonald*, No. L-05-1291, 2006-Ohio-1625, at *6-11 (Ohio Ct. App. Mar. 31, 2006); *Cadle Co. v. Schlichtmann*, 267 F.3d 14, 17-21 (1st Cir. 2001); *Pnc Bank v. Berg*, No. 94C-09-208-WTQ, 1997 Del. Super. LEXIS 19, at *7-11 (Del. Super. Ct. Jan. 31, 1997).

use primarily for personal, family, or household purposes." *Cal. Civ. Code* § 1761(a). "Services" are "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Cal. Civ. Code* § 1761(b).

Plainly, CAL II's business loan to Girardi Keese is not a "good" as defined in the CLRA, because it was not "for use primarily for personal, family or household purposes," and it was not a "service" subject to the CLRA as its purpose for "a commercial or business use" expressly excluded it from CLRA's definition of such a service. *See* Becker v. Wells Fargo Bank, N.A., Inc., No. 2:10-CV-02799 LKK, 2011 U.S. Dist. LEXIS 29687, *13 (E.D. Cal. Mar. 22, 2011); *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1015 – 17 (N.D. Cal. 2009) (collecting cases).

Accordingly, the CLRA is entirely inapplicable to CAL II's business dealings with Girardi Keese, and the eighth cause of action must be dismissed.

## 2. <u>Even If the CLRA Applied, Edelson Knows the Settlement Agreement is Not Unconscionable.</u>

One provision of the CLRA, California Civil Code §1770(a)(19), makes it an "unfair method of competition and unfair or deceptive act or practice" to "insert () an unconscionable provision in (a) contract." *California Civil Code* §1770(a)(19). Edelson's Complaint simply alleges, in conclusory fashion, that the "provisions of the settlement agreement … that provide for direct payment of a portion of the Lion Air Clients' settlement funds to (CAL II) are unconscionable." *Docket No. 1*, ¶348.

Claims must be "supported by factual allegations," "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555.

The extraordinarily specious quality of Edelson's claims against CAL II in this action may be best understood by considering Edelson's unsupported claim that the Lion Air Families' settlement agreements contain unconscionable terms.  Edelson served as co-counsel to the Lion Air Families in the litigation that resulted in those settlement agreements, and served in that capacity because the Lion Air Litigation "[was] to be filed in the Northern District of Illinois," *Docket No. 1*, ¶96, where Edelson maintains its principal place of business. *Id*, ¶24.  The Complaint explains that Edelson's co-counsel agreement required that it "assist in the litigation and settlement process." *Id*., ¶96.  Edelson's Complaint explains that "for many of the Lion Air Clients (all but Multi Rizki), the settlements required approval by Court order because they settled a case brought on behalf of a minor." *Id*., ¶100.  The Complaint itself explains: "The Lion Air Clients' settlement agreements with Boeing included terms by which a certain amount of the settlement funds would be wired directly to (CAL II)." *Docket No. 1*, ¶310, 346.  The Court issued an order approving each of those settlements. *Id*., at ¶100.

The import of those allegations is inescapable.  As co-counsel to the Lion Air Families charged with assisting in the settlement process, Edelson advocated before the Northern District of Illinois that the settlement agreements should be approved, and obtained that approval.  Edelson cannot now change course, and allege before this Court

31

that those same settlement agreements were "unreasonably and unexpectedly harsh," "unduly oppressive" or "so one-sided as to shock the conscience." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. App. 4th 899, 910-11 (2015) (defining "unconscionability"). See also, *Jackson v. County of Los Angeles*, 60 Cal. App. 4th 171, 181 (1997) ("Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.  The doctrine serves a clear purpose: to protect the integrity of the judicial process."), quoting, *Cleveland v. Policy Management Systems Corp.*, 120 F.3d 513, 517 (5th Cir 1997).

Edelson's claim that the settlement agreements are "unconscionable" defies logic, and is "no more than a legal conclusion" and is "not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 679; *Tracht Gut, LLC, v. L.A. Cnty. Treasurer & Tax Collector*, 836 F.3d 1146, 1150 – 51 (9th Cir. 2016).  In truth, based on Edelson's own advocacy in a previous hearing, the settlement agreements were judicially reviewed and approved. Accordingly, because it does not state a plausible legal claim, Edelson's Eighth Cause of Action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## D.   EDELSON CANNOT BE AWARDED PUNITIVE OR EXEMPLARY DAMAGES.

Edelson's desire to sensationalize its claims is also obvious from its utterly meritless claim for $55 Million in "punitive and exemplary damages." *Docket No.* 1 at pp. 59 – 60.

Edelson is merely, at best, an assignee, and under California law, assignees cannot be awarded punitive damages.  Punitive damage claims are personal to the one injured,

and are not assignable. *French v. Orange County Inv. Corp.,* 125 Cal. App. 587, 591 (1932). The California Supreme Court has adopted this rule without limitation. *People* v. *Superior Court,* 9 Cal. 3d 283, 287(1973); *Murphy* v. *Allstate Ins. Co.* 17 Cal. 3d 937, 942 (1976).

## V.   CONCLUSION

This Memorandum demonstrates that the Complaint herein must be dismissed as against Defendant California Attorney Lending II, Inc., with prejudice.  There is no enforceable claim for Plaintiff to pursue, as assignee, and the allegations of the Complaint itself are frivolous and establish that Plaintiff cannot state any claim resulting in a plausible right to relief against California Attorney Lending II, Inc.

For all the foregoing reasons, this Court should grant an Order dismissing the Complaint as against CAL II pursuant to Federal Rules of Civil Procedure 12(b)(6).

DATED: January 23, 2023

**WOODS OVIATT GILMAN LLP**

By:___/s/ William E. Brueckner_____
William F. Savino (admitted *pro hac vice*)
William E. Brueckner (admitted *pro hac vice*)

**PONIST LAW GROUP, PC**

By:__/s/ Sean Ponist_____
Sean E. Ponist

*Counsel for Defendant California Attorney Lending II, Inc.*

**PROOF OF SERVICE**
*Edelson PC v. Lira, et al.*
Case No. 2:22-cv-08787-JFW (MAAx)

I am a citizen of the United States, over the age of 18 years, employed in the County of Monroe in the State of New York, and not a party to this case. My business address is 1900 Bausch & Lomb Pl. Rochester, NY 14604.

On **January 23, 2023**, I served a true copy of the: **NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**, by delivering it to the person(s) indicated below in the manner as provided in FRCivP 5(b) by:

**SEE ATTACHED SERVICE LIST**

  **X**  **BY CM/ECF E-MAIL**: Through use of the Federal CM/ECF electronic filing system, I caused a courtesy copy of the above documents to be served by e-mail to the offices of the addressee(s).

  **BY E-MAIL**: I caused the above documents to be served by e-mail to the offices of the addressee(s).

I hereby certify that I am employed in the office of an attorney admitted *pro hac vice* to the Bar of this Court, United States District Court, Central District of California.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed **January 23, 2023**, at Rochester, New York.

*s/ Marisa Orlando*
Marisa Orlando

34

# SERVICE LIST

Rafey Sarkis Balabanian
Edelson PC
150 California Street, 18th Floor
San Francisco, CA 94111
rbalabanian@edelson.com

*Counsel for Plaintiff Edelson PC*

Jay Edelson
Alexander Tievsky
J. Eli Wade-Scott
Edelson PC
350 North LaSalle, 14th Floor
Chicago, IL 60654
jedelson@edelson.com
atievsky@edelson.com
ewadescott@edelson.com
hhilligoss@edelson.com

*Counsel for Plaintiff Edelson PC*

Rachel Marilyn Lannen
Engstrom, Lipscomb & Lack
10100 N Santa Monica Boulevard,
12th Floor
Los Angeles, CA 90067
rlannen@elllaw.com

*Counsel for Defendant David Lira*

Evan Christopher Borges
David Shackelford
Amir Shakoorian
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
eborges@ggtriallaw.com
dshackelford@ggtriallaw.com
ashakoorian@ggtriallaw.com

*Counsel for Defendants Erika Girardi aka
Erika Jayne and EJ Global, LLC*

Jeff Wiley Poole                           *Counsel for Defendant Joseph DiNardo*
Hamrick & Evans LLP
2600 West Olive Avenue, Suite 1020
Burbank, CA 91505
jpoole@hamricklaw.com

Richard M. Scherer, Jr.                    *Counsel for Defendant Joseph DiNardo*
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
rscherer@lippes.com

Anthony L. Lanza                           *Counsel for Defendants George Hatcher*
Brodie H. Smith                            *and Wrongful Death Consultants*
Lanza & Smith
3 Park Plaza, Suite 1650
Irvine, CA 92614
tony@lanzasmith.com
brodie@lanzasmith.com

Ryan D. Saba                               *Counsel for Defendant Keith Griffin*
Rosen & Saba LLP
2301 Rosencrans Ave., Suite 3180
El Segundo, CA 90245
rsaba@rosensaba.com

**DEFENDANT CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** CASE NO. 2:22-CV-08787-JFW-MAA