William E. Brueckner (admitted *pro hac vice*)
wbrueckner@woodsoviatt.com
William F. Savino (admitted *pro hac vice*)
wsavino@woodsoviatt.com
**WOODS OVIATT GILMAN LLP**
1900 Main Place Tower
350 Main Street
Buffalo, New York 14202
585.987.2911 (T)
585.362.4261 (F)

Sean E. Ponist (SBN 204712)
sponist@ponistlaw.com
**PONIST LAW GROUP**
27201 Puerta Real, Suite 300
Mission Viejo, California 92691
949.420.4650 (T)
858.400.4591 (F)

Attorneys for Defendant California Attorney Lending II,
Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDELSON, P.C., and Illinois professional corporation,<br><br>Plaintiff,<br><br>-vs.-<br><br>DAVID LIRA, an individual, KEITH GRIFFIN, an Individual, ERIKA GIRARDI aka ERIKA JAYNE, an Individual, GEORGE HATCHER, an individual, WRONGFUL DEATH CONSULTANTS, a California Corporation, JOSEPH DINARDO, an individual, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation,<br><br>Defendants. | Case No. 2:22-cv-08787-JFW-MAA<br><br>**DECLARATION OF PAUL CODY IN SUPPORT OF CALIFORNIA ATTORNEY LENDING II, INC.'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Hearing Date: February 27, 2023<br>Hearing Time: 1:30 pm<br>Courtroom:  7A |

1

**PAUL CODY** declares, pursuant to 28 USC §1746 and penalty of perjury:

1.     I am currently, and since January 1, 2015 have been, the Director, President and CEO of California Attorney Lending II, Inc. ("*CAL II*"). If called to testify I could offer competent testimony regarding the facts stated herein of my own personal knowledge.  I am over the age of eighteen years old, and I make this Declaration in Support of CAL II's Motion to Dismiss the Complaint in this Action.

2.     CAL II is a fully licensed and authorized lender in the State of California.

3.     CAL II provides loans and working capital lines of credit to plaintiffs' law firms located in the State of California.  Such loans are personally guaranteed by the law firms' principal attorney(s), and secured by a first priority lien on and security interest in all assets of the obligors, which includes the obligors' contractual rights of payment (e.g., attorneys' fees both earned and not yet earned), and other accounts receivable.

4.     Starting in 2011, CAL II provided a working line of credit to Girardi Keese, a plaintiffs' law firm based in Los Angeles, California.  Over the course of several years, CAL II amended, amended and restated, supplemented or otherwise modified its loan agreement with Girardi Keese and obtained the personal guaranty of Thomas V. Girardi ("*Mr. Girardi*").

5.     The lender/borrower relationship between CAL II and Girardi Keese is presently governed by that certain (i) Fourth Amended and Restated Promissory Note dated November 8, 2019 (the "*Promissory Note*"), (ii) Fourth Amended and Restated Security Agreement dated November 11, 2019 (the "*Security Agreement*"), and (iii)) other

2

loan documents executed in connection therewith (collectively referred to as the "*Loan Agreement*").  [Copies of the Promissory Note and the Security Agreement are annexed to this Declaration and incorporated herein by reference as Exhibit A.]

6.    The Security Agreement provides, *inter alia*:

> "The Collateral includes, without limitation, any right to payment of any [of Girardi Keese or Mr. Girardi] for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note) whether or not yet earned by performance and the proceeds thereof, including Net Fees and Expenses (as defined in the Note)."

7.    CAL II's security interest was duly perfected by the filing of a UCC-1 financing statement in the Office of the California Attorney General against Girardi Keese on July 6, 2011, designated as Filing No. 11-7275806299 (as amended and continued by UCC-3 financing statements to the present). [1] [Copies of the UCC filings are annexed to this Declaration and incorporated herein by reference as Exhibit B.]

---

[1]    The financing statement, as amended, mirrors the Security Agreement and describes the entirety of the collateral as "[a]ll right, title and interest in all Goods (including Equipment, Fixtures and Inventory), Money, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing… The Collateral includes, without limitation, any right to payment of any [of Girardi Keese or Mr. Girardi] for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note) whether or not yet earned by performance and the proceeds thereof, including Net Fees and Expenses (as defined in the Note)."

3

8.    Prior to the execution of the Promissory Note and Security Agreement, Mr. Girardi represented to CAL II, among other things, that: (i) he would sign a stipulated judgment in CAL II's favor; and (ii) he would send a letter to defense counsel in the litigation arising from the tragic crash of Lion Air Flight JT 610 (*Chandra v. The Boeing International Sales Corp*. ILND Lease Case No: 1:18-cv-07686, the "*Lion Air Litigation*"), wherein Girardi Keese represented families of victims (the "*Lion Air Families*"), and direct the defendant to pay that portion of the settlement which represented Girardi Keese's portion of the legal fees directly to CAL II.

9.    Based upon these and other additional protections offered and representations made by Mr. Girardi, on behalf of himself and Girardi Keese, CAL II agreed to extend additional credit to the firm, as evidenced by the Promissory Note. Accordingly, the terms of the Promissory Note required that Girardi Keese execute an irrevocable letter of instruction that authorized the defendant in the Lion Air Litigation to pay directly to CAL II a percentage of the attorneys' fees due to Girardi Keese – NOT any proceeds due to the Lion Air Clients.

10.    The requirement that Girardi Keese execute an irrevocable letter of instruction that authorized CAL II to directly receive proceeds from specified collateral from a third party is a typical secured creditor tool, and did not alter Girardi Keese's absolute obligation to repay the Promissory Note.

11.    Furthermore, Girardi Keese's overall repayment obligation to CAL II under the Promissory Note was not calculated as a percentage or share of Girardi Keese's overall

4

1  fee revenues or contingent upon the outcome of a case or cases. Rather, the Promissory

2  Note required that Girardi Keese make regularly scheduled payments of principal and

3

4  interest and pay all outstanding amounts due and owing thereunder by a date certain.

5              I declare under penalty of perjury that the
6              foregoing is true and correct. Executed on
              January 2o , 2023.
7

8

9  _____
                        PAUL CODY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28