Anthony L. Lanza (Bar No. 156703)
Brodie H. Smith (Bar No. 221877)
LANZA & SMITH
A Professional Law Corporation
3 Park Plaza, Suite 1650
Irvine, California 92614-8540
Telephone (949) 221-0490
tony@lanzasmith.com
brodie@lanzasmith.com

Attorneys for George Hatcher
& Wrongful Death Consultants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDELSON PC, an Illinois Professional corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID LIRA, an individual, KEITH GRIFFIN, an individual, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL, LLC, a California limited liability company, CHRISTOPHER KAMON, an individual, GEORGE HATCHER, an individual, WRONGFUL DEATH CONSULTANTS, a California corporation, JOSEPH DINARDO, an individual, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation,<br><br>Defendants. | Case No.: 2:22-cv-08787-JFW (MAAx)<br><br>Honorable John F. Walter<br><br>**DECLARATION OF BRODIE H. SMITH, ESQ. IN SUPPORT OF MOTION FOR "CLAW BACK" ORDER**<br><br>Complaint Filed: July 6, 2022 |

I, Brodie H. Smith, hereby declare and state as follows:

1. I am an attorney and shareholder in the law firm of Lanza & Smith, PLC, attorneys of record for Defendants George Hatcher and Wrongful Death Consultants

1
DECLARATION OF BRODIE SMITH

1  ("WDC") in this action. The facts set forth below are known to me of my own personal
2  knowledge, except where indicated on information and belief, and if called upon to
3  testify to them, I could and would competently do so.

4      2.    Defendant WDC, joined by Hatcher, filed a Federal Rule of Civil Procedure
5  12(b)(6) motion to dismiss on September 15, 2022 (Dkt. No. 43), and a Request for
6  Judicial Notice (RFJN) in support of the motion (Dkt. No. 44.)  The motion, RFJN, and
7  motions to dismiss filed by other Defendants in the Northern District of California were
8  dismissed without prejudice (Dkt. 123) after this case was transferred to this District, on
9  the basis that the motions did not comply with Central District Local Rules and this
10 Court's Standing Order. The first Exhibit to the RFJN was supposed to be a copy of a
11 pleading Edelson filed in the underlying case. That document itself had two exhibits, one
12 of which consisted of Edelson's early proposed draft of the Complaint that eventually
13 initiated this lawsuit—submitted for approval to the Northern District of Illinois. I did not
14 know at the time of filing that Hatcher had apparently used the "Comment" feature in his
15 Adobe Reader program to annotate Edelson's filing in the underlying case with
16 embedded comments intended to be privileged and only read by his legal counsel.

17     3.    On November 30, 2022, I received an email from Plaintiff Edelson PC,
18 through its attorney Alex Tievsky. At the bottom of the email, Tievsky wrote: "Second,
19 your Exhibit 1 contains material that does not appear in either Northern District of
20 Illinois filing." A true and correct copy of the email exchange between myself and Mr.
21 Tievsky is attached as **Exhibit A**. (See, page 11, highlighted.)

22     4.    After a series of follow-up emails, Tievsky stated that he had seen "24
23 comments" apparently written by George Hatcher and embedded in Exhibit 1 to the
24 RFJN (Dkt. 44.) See, Ex. A, pp. 7, 10 (relevant portions highlighted).  I confirmed to Mr.
25 Tievsky that the "comments" were indeed attorney-client privileged, why they were
26 privileged (the basis), and demanded their destruction or return. Tievsky argued that the
27 attorney/client privilege had been waived and refused to destroy Edelson's copy of the
28 document containing embedded privileged comments. See, Exhibit A hereto.

5.  Prior to receiving notice from Tievsky that he and his firm had access to privileged content, on November, 29, 2022, I didn't know about the existence of the comments digitally embedded in the PDF, nor that the "comment" feature existed in the Adobe Reader program. At the time I executed and filed the RFJN and its exhibits (Dkt. 44), the comments were *not* visible to me (they were hidden). The disclosure of attorney-client privileged content was inadvertent.

6.  My ordinary practice when preparing to file a motion, declaration, request or other pleading is to send a penultimate draft to my legal assistant (with whom I have worked for 14 years and have an established protocol) for (a) preparation of the Table of Contents and Table of Authorities, (b) attachment and, if necessary, redaction, of any exhibits plus exhibit slip sheets, (c) insertion of hearing date and time information, and (d) preparation and attachment of a proof of service if applicable. Almost always, I do this at least the day (often earlier) before the filing deadline, which is what I did in this case. In this instance, I send the penultimate drafts of the motion (Dkt. 43) and RFJN (Dkt. 44) to my assistant on September 14, 2022—the day before filing—for all of the above.

7.  My ordinary practice—and that of my firm—is that the assistant will, after completing tasks (a)-(d) above, return an ostensible "final" copy to me for final review. I will then review every page again and either direct additional edits if I find any, or give approval to my legal assistant to proceed with filing. In this case, I received the ostensible "final" copy for review on September 15, 2022, at 11:56 a.m. I reviewed it pursuant to the protocol described above. I did not know that comments from the client were embedded (hidden) in Exhibit 2 to Exhibit 1 to the RFJN. I did not see any comments in my final review on September 15, 2022, because they were not visible the way my version of Adobe Reader was configured—and I did not know that the client had embedded such digital commentary in the document.

8.  After I received the email notice from opposing counsel regarding inadvertent disclosure (Exhibit A), I re-opened our firm's conformed copy of the RFJN,

filed-stamped in blue at the top of the page by the ECF system. In this version, I went to the pages indicated by opposing counsel where he stated the "comments" would be. There I saw some small, yellow icons of about 16 font points height on some of the pages. However, these were static images. There was no metadata behind them and no commentary from my firm's client George Hatcher. To be sure of this conclusion, my firm sent the document to our IT professional. He confirmed that the yellow icons were static images and contained no metadata (no visible comments).

9.  I then asked opposing counsel Alex Tievsky by email to confirm that his reference to differences between our exhibit and the "true" document referred only to these yellow box images on the certain pages, and that there was no hidden data behind them. Opposing counsel responded that he did have access to the metadata "behind" the yellow boxes.

10. Still on the night of November 29, 2022, when I was first notified of this issue, I found a pre-filed version of the same "Exhibit 1" and opened it in my computer's Adobe Reader program. In this pre-filed version, I was able to find metadata "behind" the yellow icons—i.e. attorney-client privileged comments, *but only by reconfiguring my Adobe Reader window*. When I open my computer's Adobe Reader, there is a margin on the right-side of the screen which lists 11 "tools," none of which I ever use. The fourth in this list of 11 "tools" reads "comment." Only by clicking on the "comment" tool in this list—in our pre-ECF version only, but not our conformed copy—was I finally able to view the privileged content. I did not know it existed and did not see any of this commentary upon final review of the exhibit prior to its filing. After finally being able to see the "comments" in question, I was able to confirm that they are in-fact privileged attorney/client communications. I determined this sometime on the night of November 29, 2022. The comments are directed by George Hatcher to legal counsel and specifically created in the context of seeking legal advice.

11. I am still uncertain why my "conformed" filed-stamped copy of the RFJN does not contain privileged metadata but, according to opposing counsel, the version that

existed on the ECF System—before the document was removed—does. On information and belief, the PDF "comments"—which I didn't know existed, were preserved when the document was uploaded to the ECF system, but the document's data perhaps automatically "flattens" when it is downloaded from ECF.

12. The next morning, November 30, 2022, I immediately began steps to retract and protect the inadvertently disclosed privileged information. First, my staff and I found and invoked a procedure to temporarily "lock" incorrectly filed documents containing sensitive or confidential information pending a motion to remove the document. We contacted the appropriate clerk and were able to cause the document to be "locked" by no later than 11:54 a.m. We then asked Plaintiff's counsel via email, still on November 30th, to agree to a claw back agreement. Plaintiff's counsel declined, asserting his belief that the privilege was waived. See, Exhibit A.

13. I also contacted all other defense counsel, still on November 30th, by email and alerted them to the issue. Each stated in writing in responsive email that they had not accessed the privileged metadata and that they would honor attorney-client privilege.

14. On the morning of December 1, 2022, a hearing occurred in the Northern District of California on Defendants' various motions to transfer venue before Judge Jacqueline Scott Corley. At the end of the hearing, I advised Judge Scott Corley of an impending motion to remove Dkt. 44 from the file and expressed my concern that the court might lose jurisdiction (due to the venue change) before action could be taken to remove the document. Judge Scott Corley therefore granted relief as an oral motion. The Civil Minutes (Dkt. 100) reflect that the oral motion was granted and the document removed that day. The case was also transferred that day to the Central District of California and the Northern District of California's file was closed. The Northern District of California then lost jurisdiction and we could do nothing further in that District regarding this Claw Back motion.

15. After the case was transferred to this District, Plaintiff's counsel's Pro Hac Vice application was granted on December 15, 2022 (Dkt. 142) and Plaintiff designated

its lead counsel the following day, December 16, 2022 (Dkt. 147). I then initiated efforts to meet and confer regarding this intended Claw Back Motion with lead counsel pursuant to this court's Standing Order. Meet and confer Zoom teleconferences occurred on December 19, 2022, and completed on January 3, 2023. The Local Rule 7-3 Joint Report was filed on January 5, 2023 (Dkt. 149) which set forth the hearing date and briefing schedule of this motion.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this 23rd day of January, 2023, in Irvine, California.

                                      /s/*Brodie H. Smith*
                                      Brodie H. Smith