Walter J. Lack, Esq. (SBN 57550)
Rachel M. Lannen, Esq. (SBN 333701)
**ENGSTROM, LIPSCOMB & LACK**
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4113
Tel: (310) 552-3800 / Fax: (310) 552-9434

Attorneys for Defendant,
DAVID LIRA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No. 2:22-cv-08787-JFW (MAAx) *Assigned to the Honorable John F. Walter* |
| Plaintiffs, | |
| v. | **DEFENDANT DAVID LIRA'S REQUEST FOR JUDICIAL NOTICE** |
| DAVID LIRA, an individual, KEITH GRIFFIN, an individual, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL, LLC, a California limited liability company, CHRISTOPHER KAMON, an individual, GEORGE HATCHER, an individual, WRONGFUL DEATH CONSULTANTS, a California corporation, JOSEPH DINARDO, an individual, CALIFORNIA ATTORNEY LENDING II., a New York corporation, | Hearing Date: March, 20, 2023 Time: 1:30 p.m. Judge: Hon. John F. Walter Courtroom: 7A |
| Defendants. | |

457573

1

**DEFENDANT DAVID LIRA** ("Defendant"), requests that the Court take judicial notice, pursuant to *Federal Rule of Evidence 201(b)* and the Court's inherent powers, of the Exhibits described below, as well as the contents thereof. This request is made in support of LIRA's Motion to Stay Proceedings Until Resolution of the Parallel Criminal Proceeding.

In connection with Defendant's Motion to Stay Proceedings Until Resolution of the Parallel Criminal Proceeding, this Court may take judicial notice of the Exhibits under Federal Rule of Evidence 201, which permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." *Fed. R. Evid. 201(b)*. A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid. 201(b)(1)-(2)*. This Court may take judicial notice of matters of public record when considering Defendant's Motion to Stay. Courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012)*.

Pursuant to *Fed. R. Evid. 201(b)*, Defendant Lira requests that the Court take judicial notice of the following documents on file in federal court:

1.      Indictment in *United States v. Thomas Girardi, et al.,* U.S. District Court, N.D. Illinois, Case No. 1:23-cr-00054, filed on February 1, 2023, which is attached hereto as **Exhibit 1**.

2.      Indictment in the *United States v. Thomas Vincent Girardi, et al.*, U.S. District Court, C.D. California, Case No. 2:23-cr-00047, which is attached hereto as **Exhibit 2**.

///

///

///

///

1   Dated: February 10, 2023        ENGSTROM, LIPSCOMB & LACK

2

3                            By:_____

4                               WALTER J. LACK, ESQ.
                                   RACHEL M. LANNEN, ESQ

5                               Attorneys for Defendant David Lira

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

23-CR-54
Judge Guzman
Magistrate Judge Cummings

**FILED**

FEB 01 2023 SMB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 1 2023

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| THOMAS V. GIRARDI, | ) | Code, Sections 1343 and 401(3) |
| CHRISTOPHER K. KAMON, and | ) | |
| DAVID R. LIRA | ) | |

## COUNT ONE

The SPECIAL OCTOBER 2022 GRAND JURY charges:

1.     At times material to this indictment:

*Individuals and Entities Involved*

a.     Defendant THOMAS V. GIRARDI was a lawyer who owned and operated a law firm called Girardi Keese ("GK"). GIRARDI was licensed to practice law in the State of California and was admitted to the general bar of the United States District Court for the Northern District of Illinois.

b.     Defendant DAVID R. LIRA was a lawyer who worked at GK. LIRA was licensed to practice law in the State of California and was admitted to the general bar of the United States District Court for the Northern District of Illinois.

c.     Defendant CHRISTOPHER K. KAMON was employed as GK's head of accounting and finance.

d.     GK Lawyer A was a lawyer who worked at GK.

e.      Lender A was a litigation financing firm. GK and GIRARDI owed Lender A approximately $8 million for amounts that Lender A loaned to GK, which GIRARDI had personally guaranteed.

*GK's Bank Accounts*

f.      IOLTA Trust Account: In California, all funds received by a lawyer or law firm for the benefit of a client, including settlement funds, must be deposited into a client trust account at a bank. Such funds can be deposited into a non-segregated trust account known as an "IOLTA" account only if the deposited funds are nominal in amount or are to be held for a short period of time. GIRARDI and LIRA were authorized signatories on an IOLTA account maintained by GK, and LIRA was identified as a "Partner" of GK on that account. KAMON was authorized to initiate wire transfers from GK's IOLTA account, and KAMON had online access to all information regarding that account.

g.      Other Bank Accounts: GK maintained separate checking accounts from which to pay GK's business and operational expenses and its payroll. GIRARDI and KAMON were authorized signatories on those accounts.

*California Rules of Professional Conduct for Lawyers*

h.      Lawyers licensed to practice law in California are required to comply with the California Rules of Professional Conduct ("CRPC").

i.      Under the CRPC, lawyers must: (1) promptly notify their clients when they receive funds in which their clients have an interest; (2) promptly distribute to their clients any undisputed funds that the clients are entitled to receive;

and (3) take reasonable remedial measures once they became aware that a person is or was engaged in criminal or fraudulent conduct with respect to a legal proceeding in which the lawyer was involved.

*GK's Representation of Victims of the Lion Air Crash*

j.     On October 29, 2018, Lion Air Flight 610 crashed in the Java Sea shortly after takeoff from Jakarta, Indonesia. All 189 people on board the aircraft were killed. The aircraft was manufactured by Boeing.

k.     Victims A through E are relatives of passengers who died in the Lion Air crash.

l.     GIRARDI, LIRA, and GK Lawyer A, through GK, represented Victims A through E, and certain of their family members, including their minor children (collectively, "the Client Victims"), in lawsuits against Boeing (the "Lion Air cases"). Those lawsuits were filed in Chicago in the United States District Court for the Northern District of Illinois (the "Court"). GK engaged Law Firm A, a law firm based in Chicago, to act as co-counsel in those cases.

m.     After filing the Lion Air cases, LIRA and GK Lawyer A participated in mediations on behalf of the Client Victims with counsel for Boeing. As a result of those mediations, LIRA and GK Lawyer A recommended to Victims A through D that they and their family members agree to settle their cases with Boeing for an aggregated total of approximately $11,000,000. Victims A through D agreed. Because certain of the Client Victims were minors, those agreements required Court approval.

3

n.      In or about February and March 2020, the Court issued orders approving each of those settlement agreements. Each of those orders required GK to distribute the settlement funds to Victims A through D and their family members from the IOLTA "as soon as practicable" after receiving those funds from Boeing's counsel.

o.      In or about April 2020, after an additional mediation involving Victim E's case, LIRA and GK Lawyer A recommended to Victim E that he settle his case with Boeing for approximately $1,550,000. Victim E agreed.

p.      After each of the settlement agreements were reached for the Client Victims, the Court entered orders dismissing their respective cases.

q.      On or about the dates set forth below, in the approximate amounts indicated, Boeing's counsel wired settlement funds into GK's IOLTA account pursuant to the terms of the settlement agreements with the Client Victims:

| CLIENT VICTIM | DATE | AMOUNT WIRED INTO GK'S IOLTA | AMOUNT DUE TO CLIENT VICTIM |
| --- | --- | --- | --- |
| A | March 4, 2020 | $2,105,000 | $1,710,000 |
| B | March 11, 2020 | $2,530,000 | $2,060,000 |
| C | March 27, 2020 | $2,112,500 | $1,725,000 |
| D | March 30, 2020 | $2,530,000 | $2,060,000 |
| E | June 9, 2020 | $1,317,500 | $1,069,500 |

Those wire transfers were net of GK's attorneys' fees. Specifically, under the terms of the settlement agreements for each of the Client Victims, the attorneys' fees to which GK was entitled were separately wired by Boeing's counsel directly to Lender A as partial payments toward GK's and GIRARDI's $8 million loan from Lender A. As a result, GK was not entitled to retain any attorneys' fees from those settlements.

4

Instead, except for attorneys' fees owed to Law Firm A, any costs incurred by GK (up to 1% of the settlement amount), and any advances that GK had made to the Client Victims, all the funds that Boeing's counsel wired into GK's IOLTA were required to be distributed to the Client Victims, as indicated in the above column labeled "Amount Due to Client Victim."

2.     Beginning in or about 2019, and continuing until in or about December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

>   THOMAS V. GIRARDI,
>   CHRISTOPHER K. KAMON, and
>   DAVID R. LIRA,

defendants herein, and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud the Client Victims and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.     It was part of the scheme that GIRARDI, KAMON, and LIRA knowingly misappropriated and caused to be misappropriated settlement funds belonging to the Client Victims by diverting those funds or causing those funds to be diverted from GK's IOLTA account for improper purposes. Those improper purposes included, among other things: (1) paying GK's business and operating expenses; (2) funding GK's payroll; (3) paying American Express Card bills; and (4) funding settlements to other GK clients, whose own settlement funds previously had been misappropriated by GK. The defendants accomplished the misappropriation of the Client Victims' funds by, among other things, making false statements and causing false statements

to be made to the Client Victims regarding the status of their settlement funds, and concealing and causing those misappropriations to be concealed from the Client Victims, Law Firm A, and the Court.

*Misappropriation of the Client Victims' Settlement Funds*

4.     It was further part of the scheme that KAMON, at GIRARDI's direction and with LIRA's knowledge and assistance, fraudulently misappropriated millions of dollars of the Client Victims' settlement funds from the IOLTA account by preparing checks from that account payable to GK and causing those checks to be deposited into one of GK's business accounts.

5.     It was further part of the scheme that KAMON caused false descriptions to be written in the memorandum section of those checks, including:

a.     that the misappropriated funds were "fees" owed to GK from the Lion Air cases, when, as the defendants knew, GK was not entitled to retain those funds as fees from those cases; and

b.     that the misappropriated funds were for "miscellaneous case costs," when, as the defendants knew, those funds did not represent expenses relating to any case.

6.     It was further part of the scheme that KAMON, at GIRARDI's direction and with LIRA's knowledge and assistance, fraudulently used the Client Victims' funds that had been misappropriated to GK's business account to pay GK's business and operating expenses, to fund GK's payroll, and to pay American Express Card bills.

6

7.     It was further part of the scheme that KAMON, at GIRARDI's direction and with LIRA's knowledge and assistance, fraudulently misappropriated additional amounts of the Client Victims' settlement funds from the IOLTA account by preparing checks from that account payable to other clients of GK, whose own settlement funds previously had been misappropriated by GK.

*False Statements about and Concealment of*
*the Misappropriation of the Client Victims' Funds*

8.     It was further part of the scheme that GIRARDI, KAMON, and LIRA fraudulently concealed and caused to be concealed from the Client Victims, Law Firm A, and the Court that GK had received the Client Victims' funds in its IOLTA account and had failed to distribute those funds to the Client Victims as required.

9.     It was further part of the scheme that, in response to repeated inquiries by the Client Victims regarding the status of their funds, GIRARDI, KAMON, and LIRA fraudulently concealed and caused to be concealed from the Client Victims, Law Firm A, and the Court that the Client Victims' funds were being misappropriated.

10.     It was further part of the scheme that GIRARDI, KAMON, and LIRA falsely stated and caused to be stated to the Client Victims that the COVID-19 pandemic prevented and delayed GK from distributing the settlement funds to the Client Victims. In fact, as the defendants knew, GK remained able to process financial transactions into and out of the IOLTA account during the pandemic and the reason the settlement funds could not be promptly distributed to the Client Victims was because those funds were being misappropriated.

7

11.    It was further part of the scheme that, on or about April 6, 2020, in response to an email from Victim B to LIRA and GK Lawyer A requesting a "loan" of $40,000, KAMON, at GIRARDI's direction and with LIRA's and GK Lawyer A's knowledge, wired $40,000 to Victim B as a purported "advance." In fact, as the defendants knew, GK previously had received all of Victim B's settlement funds in its IOLTA account, GK was required to distribute those funds to Victim B without conditions and not as a loan or an advance, and the funds were being misappropriated.

12.    It was further part of the scheme that, on or about May 14, 2020, GIRARDI emailed a letter to Victim B falsely stating:

> We made an agreement with Boeing that all of the cases
> would be resolved. They gave us special authorization to
> distribute 50%.

LIRA and GK Lawyer A received GIRARDI's letter before it was sent to Victim B, and LIRA reviewed and approved that letter. KAMON received that letter shortly after it was sent to Victim B. Each of the defendants knew that there was no agreement with Boeing that prevented GK from distributing the settlement funds to Victim B until "all of the cases" are resolved, that no "special authorization" was required from Boeing to distribute those funds to Victim B, and that the reason the funds had not been distributed to Victim B was because they were being misappropriated.

13.    It was further part of the scheme that, on or about May 14, 2020, GIRARDI emailed a letter to Victim C falsely stating:

> I got enough of the problem taken care of so we were able to
> release 50% of the settlement.

LIRA and GK Lawyer A received GIRARDI's letter before it was sent to Victim C, and LIRA reviewed and approved that letter. KAMON received that letter shortly after it was sent to Victim C. Each of the defendants knew that there was no "problem" that prevented GK from distributing the settlement funds to Victim C, and that the reason the settlement funds had not been distributed to Victim C was because they were being misappropriated.

14.   It was further part of the scheme that, on or about May 19, 2020, GIRARDI, with the knowledge of KAMON, LIRA, and GK Lawyer A, sent a letter to Victim D, in which GIRARDI stated, "I think you are going to love me in 30 days," falsely implying and promising that GK and GIRARDI would distribute the balance of Victim D's settlement funds within 30 days and further concealing that those funds were being misappropriated.

15.   It was further part of the scheme that, on or about June 19, 2020, GIRARDI sent letters to Victims A through D falsely stating:

> There are some serious issues. I have been back east four times
> to get everything resolved. I think I need two more weeks. I
> will insist that, at least, we get the interest in two weeks, if I
> cannot resolve it.

KAMON and GK Lawyer A subsequently received a copy of the letter sent to Victim D. As each of GIRARDI, KAMON, and GK Lawyer A knew, there were no "serious issues" preventing GK from distributing the settlement funds to Victims A through D, GIRARDI had not been back east four times to get any such purported

issues resolved, and the reason the settlement funds had not been distributed to the Client Victims was because those funds were being misappropriated.

16.    It was further part of the scheme that the defendants fraudulently concealed from Law Firm A and the Court that GIRARDI sent the letters to Victims A through D containing the false statements described above.

17.    It was further part of the scheme that, on or about December 4, 2020, GIRARDI left a voicemail message for a lawyer at Law Firm A, in which GIRARDI falsely stated, "I think we got clearance to send money out today."

*Partial Lulling Payments to Victims A through D*

18.    It was further part of the scheme that, in response to repeated inquiries by Victims A through D about, and demands for, their settlement funds, and to hinder or delay Victims A through D from discovering and reporting the misappropriation of those funds, the defendants made partial payments and caused partial payments to be made to Victims A through D, as follows:

a.    on or about May 11, 2020, wire transfers from GK's IOLTA account to Victim A of approximately $855,000; to Victim B of approximately $1,010,000; to Victim C of approximately $862,500; and to Victim D of approximately $1,030,000;

b.    on or about July 6, 2020, wire transfers from GK's IOLTA account of $50,000 to each of Victims A through D; and

c.    on or about September 3, 2020, wire transfers from GK's IOLTA account to Victim A of approximately $305,000; to Victim B of approximately

$460,000; to Victim C of approximately $312,500; and to Victim D of approximately $460,000.

19. As a result of the scheme, the defendants caused the Client Victims to suffer losses of over $3 million.

20. It was further part of the scheme that GIRARDI, KAMON, and LIRA concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

21. On or about March 2, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GK Lawyer A, using the email address "[GKLawyerA]@girardikeese.com," received by, among others, a lawyer at Law Firm A and LIRA, using the email address "dlira@girardikeese.com," which email attached a settlement release signed by Victim B;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.    On or about April 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transfer of $40,000, purportedly as an "advance" to Victim B, from GK's IOLTA trust account to Victim B's bank account in Indonesia;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.     On or about April 22, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA, using the email address "dlira@girardikeese.com," to Victims A through D, falsely stating that their settlement payments were delayed because of the pandemic, including that "[w]e are still under the government mandate to stay at home";

In violation of Title 18, United States Code, Sections 1343 and 2.

13

## COUNT FOUR

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.     On or about May 12, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA, using the email address "dlira@girardikeese.com," received by, among others, lawyers from Law Firm A, which email concealed and omitted material facts, including that: (1) all settlement funds for Victims A through D had been received in GK's IOLTA trust account; (2) GK had failed to distribute those funds to the Client Victims as required; and (3) GK was misappropriating settlement funds belonging to Victims A through D;

In violation of Title 18, United States Code, Sections 1343 and 2.

14

## COUNT FIVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.      On or about May 14, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GIRARDI's legal assistant to Client B in Indonesia, attaching a letter from GIRARDI containing the false statements: "We made an agreement with Boeing that all of the cases would be resolved. They gave us special authorization to distribute 50%";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.     On or about May 14, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GIRARDI's legal assistant to Client C in Indonesia, attaching a letter from GIRARDI containing the false statement: "I got enough of the problem taken care of so we were able to release 50% of the settlement";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.     On or about May 15, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA using the email address "dlira@girardikeese.com," received by, among others, lawyers from Law Firm A, which email concealed and omitted material facts, including that: (1) all settlement funds for Victims A through D had been received in GK's IOLTA trust account; (2) GK had failed to distribute those funds to the Client Victims as required; (3) GK was misappropriating settlement funds belonging to Victims A through D; and (4) GIRARDI had sent letters to Victims B and C on or about May 14, 2020, which letters included false explanations for why those victims had not been sent their settlement funds;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHT

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.     On or about May 19, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GK Lawyer A, using the email address "[GKLawyerA]@girardikeese.com," received by, among others, a lawyer at Law Firm A and LIRA, using the email address "dlira@girardikeese.com," which email attached a settlement release signed by Victim E;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.      Beginning on or about March 4, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated February 24, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim A as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT TEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.     Beginning on or about March 11, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated March 4, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim B as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT ELEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.     Beginning on or about March 27, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated March 9, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim C as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT TWELVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.      Beginning on or about March 30, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

THOMAS V. GIRARDI,
CHRISTOPHER K. KAMON, and
DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated March 4, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim D as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## FORFEITURE ALLEGATION

The SPECIAL OCTOBER 2022 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendants GIRARDI, KAMON, and LIRA shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes but is not limited to: a personal money judgment in the amount of approximately $3,069,500.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Jason Yonan on behalf of the
UNITED STATES ATTORNEY

# EXHIBIT 2

**F I L E D**
CLERK, U.S. DISTRICT COURT

1/31/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ vav _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| UNITED STATES OF AMERICA, | CR No.   2:23-cr-00047-JFW |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| THOMAS VINCENT GIRARDI and CHRISTOPHER KAZUO KAMON, | |
| Defendants. | |

The Grand Jury charges:

COUNTS ONE THROUGH FIVE

[18 U.S.C. §§ 1343, 2(a)]

A.   INTRODUCTORY ALLEGATIONS

1.   At times relevant to this Indictment:

a.   Defendant THOMAS VINCENT GIRARDI was a resident of Pasadena, California.

b.   Defendant GIRARDI was an attorney licensed to practice law in the State of California.

c.   Defendant GIRARDI was the 100 percent owner and managing partner of Girardi Keese, a law firm located in Los Angeles, California, that primarily represented plaintiffs in personal injury

cases.  On or about December 18, 2020, after a series of civil lawsuits publicly alleged that Girardi Keese had misappropriated client funds, certain creditors of Girardi Keese commenced an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code against Girardi Keese.  On or about January 13, 2021, the Bankruptcy Court entered an Order for Relief Under Chapter 7 and ordered the appointment of a Chapter 7 Trustee.

d.  Defendant GIRARDI was a signatory on and exercised control over the following bank accounts, which were opened and maintained in Los Angeles, California:

i.  A Girardi Keese attorney-client trust account, also called an "Interest on Lawyer's Trust Account" or "IOLTA" account, at Torrey Pines Bank, bearing an account number ending in 5859 (the "Torrey Pines IOLTA Account"); and

ii.  A Girardi Keese IOLTA account, at Nano Banc, bearing an account number ending in 0567 (the "Nano Banc IOLTA Account").

e.  Defendant GIRARDI became a member of the State Bar of California in 1965 and was obligated to comply with the California Rules of Professional Conduct.  Defendant GIRARDI knew that the California Rules of Professional Conduct required him to, among other things, promptly notify a client of the receipt of any funds the client was entitled to receive, and promptly pay or deliver to the client or such payees as designated by the client any such funds that defendant GIRARDI and Girardi Keese held in trust for the client upon the client's request.

f.  Defendant CHRISTOPHER KAZUO KAMON was a resident of Palos Verdes and Encino, California.  From in or about 2004 until in

2

1  or about December 2020, defendant KAMON was the Controller and Chief

2  Financial Officer ("CFO") of Girardi Keese, from which position he

3  oversaw the law firm's financial affairs, supervised its accounting

4  department, and was in charge of paying the firm's expenses.  As

5  Girardi Keese's Controller and CFO, defendant KAMON had a duty to

6  maintain books and records that accurately reflected the firm's

7  finances, including the disposition of monies held in its attorney-

8  client trust accounts.

9          g.   "Client 1" was an individual who resided in San Bruno,

10 California.  Beginning on or about October 1, 2010, defendant GIRARDI

11 and Girardi Keese had a formal attorney-client relationship with

12 Client 1.  Specifically, defendant GIRARDI and Girardi Keese agreed

13 to represent Client 1 in connection with a lawsuit against a public

14 utility related to significant injuries Client 1 sustained as a

15 result of an explosion that caused severe burns all over his body.

16         h.   "Client 2" was an individual who resided in Lake

17 Havasu City, Arizona.  Beginning as early as in or around May 2019,

18 defendant GIRARDI and Girardi Keese had a formal attorney-client

19 relationship with Client 2.  Specifically, defendant GIRARDI and

20 Girardi Keese agreed to represent Client 2 in connection with

21 potential litigation related to a boating accident where the boat

22 unexpectedly sped up to 120 miles per hour, flipped, and ejected all

23 three occupants, and as a result of which Client 2's husband died.

24         i.   "Client 3" was an individual who resided in Castaic,

25 California.  Beginning as early as 2012, defendant GIRARDI and

26 Girardi Keese had a formal attorney-client relationship with Client

27 3.  Specifically, defendant GIRARDI and Girardi Keese agreed to

28 represent Client 3 in connection with a lawsuit against a medical

3

device provider related to severe injuries, including organ damage,
Client 3 sustained as a result of a defective medical device.

        j.  "Client 4" and "Client 5" were individuals who resided
in Los Angeles, California.  Beginning as early as in or around
December 2019, defendant GIRARDI and Girardi Keese had a formal
attorney-client relationship with Client 4 and Client 5.
Specifically, defendant GIRARDI and Girardi Keese agreed to represent
Client 4 and Client 5 in connection with a lawsuit related to
injuries Client 4, Client 5, and their minor son, who was paralyzed
from the neck down, sustained in an automobile collision.

B.    THE SCHEME TO DEFRAUD

    2.  Beginning at least as early as in or around 2010 and
continuing through at least in or around December 2020, in Los
Angeles County, within the Central District of California, and
elsewhere, defendants GIRARDI and KAMON, together with others known
and unknown to the Grand Jury, knowingly and with intent to defraud,
devised, participated in, and executed a scheme to defraud victim
clients to whom defendant GIRARDI and Girardi Keese had agreed to
provide legal services including, but not limited to, Client 1,
Client 2, Client 3, Client 4, and Client 5, as to material matters,
and to obtain money and property from such victim clients by means of
material false and fraudulent pretenses, representations, and
promises, and the concealment of material facts, including material
facts that defendant GIRARDI had a duty to disclose.

    3.  The fraudulent scheme operated, in substance, in the
following manner:

1          a.   Defendant GIRARDI would negotiate a settlement on

2   behalf of a client that would require the payment of funds to the

3   client.

4          b.   Defendant GIRARDI would misrepresent, conceal, and

5   falsely describe to the client the true terms of the settlement

6   and/or the disposition of the settlement proceeds.

7          c.   Defendants GIRARDI and KAMON would cause the

8   settlement proceeds to be deposited in or transferred to attorney

9   trust accounts, including the Torrey Pines IOLTA Account and the Nano

10  Banc IOLTA Account, that defendants GIRARDI and KAMON controlled.

11         d.   Defendants GIRARDI and KAMON would thereafter embezzle

12  and misappropriate settlement funds from the Torrey Pines IOLTA

13  Account and the Nano Banc IOLTA Account belonging to Girardi Keese

14  clients for improper purposes.  The improper purposes included, among

15  other things, paying other Girardi Keese clients whose own settlement

16  funds previously had been misappropriated, paying Girardi Keese's

17  payroll, and paying other Girardi Keese's expenses, including its

18  American Express Card bills encompassing charges for defendant

19  GIRARDI's and defendant KAMON's personal expenses.

20         e.   As part of their scheme and to conceal the

21  embezzlements and misappropriations from the victim clients,

22  defendants GIRARDI and KAMON would send and cause to be sent lulling

23  communications to the clients that, among other things, falsely

24  denied that the settlement proceeds had been paid and falsely claimed

25  that Girardi Keese could not pay the settlement proceeds to clients

26  until certain purported requirements had been met, such as addressing

27  supposed tax obligations, obtaining supposedly necessary

28

1  authorizations from judges, and satisfying medical liens and other

2  debts.

3         f.   As further part of their scheme and to conceal the

4  embezzlements and misappropriations from the victim clients,

5  defendants GIRARDI and KAMON would also send and cause to be sent

6  lulling payments to the clients, falsely representing and maintain

7  the false pretense that such payments were "advances" on the

8  purportedly yet-to-be received settlement proceeds, or "interest

9  payments" on the settlement proceeds that purportedly could not be

10 paid to the clients until the fabricated requirements were satisfied.

11               **Embezzlement of Client 1's Funds**

12     4.   In or about January 2013, defendant GIRARDI negotiated a

13 settlement of the lawsuit related to Client 1's injuries without

14 obtaining prior approval of the settlement terms from Client 1.  The

15 terms of the settlement provided that Client 1 would be paid

16 $53,000,000 to release all of Client 1's claims.  Pursuant to Client

17 1's retainer agreement with Girardi Keese, Girardi Keese's attorneys'

18 fees, in the amount of 25% of the settlement amount, costs, and

19 expenses were to be deducted from the settlement proceeds and paid to

20 Girardi Keese.

21     5.   On or about January 10, 2013, defendant GIRARDI told Client

22 1 that the case had settled.  Defendant GIRARDI had not previously

23 informed Client 1 of the settlement or obtained Client 1's consent to

24 the terms of the settlement and concealed the true terms of the

25 settlement from Client 1.  Defendant GIRARDI falsely represented to

26 Client 1 that the total settlement amount was approximately

27 $7,250,000, and concealed from Client 1 that the true amount of the

28 settlement was $53,000,000.  Defendant GIRARDI further falsely

6

represented that the settlement would be structured as an annuity to be paid to Client 1 for the rest of Client 1's life when, as defendant GIRARDI then knew, the settlement terms did not require the creation of an annuity or any other structured settlement, and defendant GIRARDI had not obtained Client 1's consent to so structure the settlement.

6.   On or about January 24, 2013, over half of Client 1's settlement, namely, $28,000,000, was wire transferred to the Torrey Pines IOLTA Account.  Defendants GIRARDI and KAMON were provided notice of the incoming wire that same day.  Defendants GIRARDI and KAMON then misappropriated and embezzled a portion of Client 1's settlement funds and caused those funds to be used to pay other expenses and liabilities of Girardi Keese unrelated to Client 1, including payments to other Girardi Keese clients whose own settlement funds had previously been misappropriated by defendants GIRARDI and KAMON, and others.

7.   In order to lull Client 1 and prevent Client 1 from discovering that defendants GIRARDI and KAMON had embezzled Client 1's settlement funds, defendant GIRARDI and KAMON, aiding and abetting each other, committed and caused to be committed the following acts, among others:

    a.   Falsely informing Client 1 that Client 1's settlement "should be tax free," and that delays in payment of settlement funds to Client 1 were due to defendant GIRARDI's efforts to remove any tax liability for Client 1 when, as defendant GIRARDI then knew, Client 1's settlement was not taxable;

    b.   Falsely informing Client 1 that Client 1's settlement funds had been transferred into a separate interest-bearing account

7

when, in fact, no such transfers had been made and no such separate interest-bearing account containing Client 1's settlement funds existed;

c.   Falsely informing Client 1 that Client 1's settlement funds were "locked up" for a six-month period due to their deposit into the separate interest-bearing account, when no such separate interest-bearing account existed;

d.   Sending and causing to be sent lulling payments to Client 1 as purported "interest payments" deriving from the supposed separate interest-bearing account;

e.   Sending and causing to be sent letters to Client 1 falsely claiming that "we worked magic so far in getting these huge interest rates and getting the first two years tax free";

f.   Sending and causing to be sent letters to Client 1 falsely attributing delays in the payment of settlement funds to Client 1 to supposed court oversight of the distribution of settlement funds when, in fact, no such court oversight was required or existed; and

g.   Sending and causing to be sent, on July 1, 2019, a check for $2,500,000 to Client 1 purportedly as a disbursement of Client 1's settlement funds, which funds were, as defendant GIRARDI then knew, settlement proceeds belonging to Client 4 and Client 5 (as described below), and not Client 1's settlement proceeds, which defendants GIRARDI and KAMON had already spent and caused to be spent through disbursements unrelated to Client 1.

### Embezzlement of Client 2's Funds

8.   In or about April 2020, defendant GIRARDI negotiated a settlement of legal claims related to the death of Client 2's spouse.

8

On or about June 24, 2020, defendants GIRARDI and KAMON received a settlement check for $504,400 as payment on Client 2's claims. Pursuant to Client 2's retainer agreement with Girardi Keese, Girardi Keese's attorneys' fees, in the amount of 33.3% of the settlement amount, costs, and expenses were to be deducted from the settlement proceeds and paid to Girardi Keese.

9.   On or about June 25, 2020, defendant GIRARDI caused Client 2's settlement funds to be deposited into the Torrey Pines IOLTA Account.  Prior to that deposit, and in violation of the California Rules of Professional Conduct governing the management of attorney-client trust accounts, defendants GIRARDI and KAMON transferred and caused the transfer of approximately $183,605.45 from the Torrey Pines IOLTA account to a Girardi Keese operating account, as "fees" owed to Girardi Keese from Client 2's settlement, when defendants GIRARDI and KAMON then knew that the funds in fact came from settlement funds belonging to other Girardi Keese clients. Defendants GIRARDI and KAMON used the transferred funds to pay Girardi Keese payroll expenses and fund a $50,000 check written on the operating account to defendant GIRARDI, which defendant GIRARDI then used to make payments to two exclusive country clubs.

10.   In order to lull Client 2 and prevent Client 2 from discovering that defendant GIRARDI had embezzled Client 2's settlement funds, defendants GIRARDI and KAMON committed and caused to be committed the following acts, among others:

a.   In response to Client 2's repeated efforts to obtain the settlement funds, defendant GIRARDI falsely told Client 2 that he was working on the "last signature from a judge" and that defendant GIRARDI would send Client 2 a "personal check" for $50,000 as an

9

"advance" on Client 2's settlement, when, as defendant GIRARDI then knew, there was no need for any "signature from a judge" before Client 2's settlement proceeds could be disbursed, and there was no need for an "advance" because Girardi Keese had already received Client 2's settlement payment;

b.   On July 24, 2020, approximately one month after receiving Client 2's settlement check and after being informed that Client 2 still had not received her settlement payment and was contemplating filing a complaint with the State Bar of California, defendants GIRARDI and KAMON sent and caused to be sent, for the purpose of lulling Client 2, a $50,000 check drawn on the Torrey Pines IOLTA Account;

c.   In order to further lull Client 2, and to falsely assure Client 2 that Client 2 did not need to take any further steps to obtain full payment of her settlement, defendants GIRARDI and KAMON caused a $100,000 payment to be made to Client 2 in the form of a check drawn on the Nano Banc IOLTA Account;

d.   In order to further lull Client 2, defendant GIRARDI falsely told Client 2 and an attorney Client 2 had hired to help Client 2 obtain the settlement funds from Girardi Keese that defendant GIRARDI was working to mitigate the taxes purportedly owed by Client 2 on the settlement funds and, separately, that Girardi Keese had only received a portion of Client 2's settlement when, in fact, as defendant GIRARDI then knew, no taxes were owed on the settlement funds and Girardi Keese had received Client 2's full settlement amount approximately five months earlier; and

e.   In order to further lull Client 2, defendant GIRARDI falsely claimed to have arranged for a check for the balance of the

1   settlement to be available for Client 2 to pick up.  In fact, when

2   the messenger sent to get the check arrived, defendant GIRARDI caused

3   the messenger to be falsely told, among other things, that defendant

4   GIRARDI was not available and that Client 2's check was inaccessible

5   because it was purportedly locked in the Girardi Keese accounting

6   office.

### Embezzlement of Client 3's Funds

8       11.  In or about October 2018, defendant GIRARDI negotiated a

9   settlement of Client 3's lawsuit related to injuries caused by a

10  defective medical device.  Pursuant to Client 3's retainer agreement

11  with Girardi Keese, Girardi Keese's attorneys' fees, in the amount of

12  40% of the settlement amount, costs, and expenses were to be deducted

13  from the settlement proceeds and paid to Girardi Keese.  Disbursement

14  of Client 3's settlement funds required approval by the bankruptcy

15  trustee and bankruptcy court, which was obtained in March 2020.

16      12.  On or about May 22, 2020, defendants GIRARDI and KAMON

17  received a wire for $128,250 into the Torrey Pines IOLTA Account as

18  settlement payment on Client 3's claims.  Defendants GIRARDI and

19  KAMON then misappropriated and caused to be misappropriated Client

20  3's settlement funds, including by using amounts in excess of any

21  money due to Girardi Keese to pay for leases of luxury cars.

22      13.  In order to lull Client 3 and prevent Client 3 from

23  discovering that defendants GIRARDI and KAMON had embezzled Client

24  3's settlement funds, defendant GIRARDI committed and caused to be

25  committed the following acts, among others:

26          a.  Causing a letter to be sent to Client 3, on or about

27  July 31, 2020, falsely stating, in part, "We are trying desperately

28  to get everything figured out.  Since there is a Bankruptcy Trustee,

1   we have to get an understanding of how much goes to the Trustee and

2   how much goes to you . . . I am not getting much of a response from

3   the Trustee."  In truth, as defendant GIRARDI then knew, defendant

4   GIRARDI and the bankruptcy trustee had already negotiated the

5   apportionment of Client 3's settlement funds, which the bankruptcy

6   court had approved approximately four months earlier, in or around

7   March 2020; and

8          b.   Falsely stating in voicemail messages to Client 3 that

9   the settlement funds could not be disbursed until "certain orders"

10  were signed, when, as defendant GIRARDI then knew, no further court

11  orders were necessary, and falsely stating that "we'd like our money

12  just like you'd like yours," despite the fact that defendants GIRARDI

13  and KAMON had already received (and misappropriated) all of Client

14  3's settlement proceeds.

15                 **Embezzlement of Client 4's and Client 5's Funds**

16         14.  In or about July 2019, defendant GIRARDI negotiated a

17  settlement of the lawsuit related to the injuries sustained by Client

18  4, Client 5, and their minor child in an automobile accident.  The

19  terms of the settlement provided for a total payment of $17,500,000,

20  a portion of which would be paid to the paralyzed minor child with

21  the remaining funds due to Client 4 and Client 5.  Pursuant to Client

22  4's and Client 5's retainer agreement with Girardi Keese, Girardi

23  Keese's attorneys' fees, in the amount of 25% of the settlement

24  amount for the minor and 40% of the settlement amount for Client 4

25  and Client 5, costs, and expenses were to be deducted from the

26  settlement proceeds and paid to Girardi Keese.

27         15.  The settlement agreement specified that the minor's portion

28  of the settlement proceeds would be placed in a trust and an annuity

                                          12

to be controlled and administered by a third party, neither of which could be accessed by defendants GIRARDI and KAMON.  The remaining settlement funds were to be paid directly to Girardi Keese for the benefit of Client 4 and Client 5.

16.  On or about June 17, 2019, the first installment of the settlement payment, namely, $4,000,000, was wired transferred to the Nano Banc IOLTA Account.  Prior to that deposit, and in violation of rules governing the management of funds in attorney client-trust accounts, defendants GIRARDI and KAMON transferred and caused the transfer of approximately $1,450,000 purportedly as an "advance" from Client 4's and Client 5's settlement funds, which amount was deposited into Girardi Keese operating accounts, when defendants GIRARDI and KAMON then knew that the funds in fact came from settlement funds belonging to other Girardi Keese clients. Defendants GIRARDI and KAMON used the transferred funds to pay Girardi Keese operating expenses unrelated to the representation of Client 4 and Client 5.

17.  On or about July 1, 2019, defendants GIRARDI and KAMON caused a $2,500,000 check drawn on the Nano Banc IOLTA Account and comprised in large part of Client 4's and Client 5's settlement funds, to be issued to Client 1 as a partial payment of Client 1's settlement funds owed to Client 1 but which had been misappropriated by defendants GIRARDI and KAMON.

18.  On or about August 2, 2019, a further payment of Client 4's and Client 5's settlement, namely, a check for $5,119,449.61, was deposited into the Nano Banc IOLTA Account.

19.  In order to lull Client 4 and Client 5 and prevent them from discovering that defendants GIRARDI and KAMON had embezzled

13

their settlement funds, defendants GIRARDI and KAMON committed and
caused to be committed the following acts, among others:

       a.   Providing incremental lulling payments to Client 4 and
Client 5, which comprised only a fraction of the total settlement due
to Client 4 and Client 5;

       b.   Falsely informing Client 4 and Client 5 that the
remaining settlement funds could only be paid after medical liens had
been satisfied when, as defendant GIRARDI then knew, all medical
expenses related to Client 4's and Client 5's claims had already been
paid;

       c.   Falsely informing Client 4 and Client 5 that
disbursement of their settlement proceeds was delayed due to court
proceedings related to their minor child when, as defendant GIRARDI
then knew, payment of settlement funds to Client 4 and Client 5 was
not dependent on any court proceedings;

       d.   Falsely informing Client 4 and Client 5 that delays in
payment of their settlement funds were due to defendant GIRARDI's
purported efforts to remove any tax liability for Client 4 and Client
5, including defendant GIRARDI's travel to Washington, D.C., to meet
with government officials to remove tax liability for the settlement
when, as defendant GIRARDI then knew, Client 4's and Client 5's
settlement funds were not taxable; and

       e.   Falsely informing Client 4 and Client 5 that their
settlement funds could not be disbursed until additional court
approvals were received when, as defendant GIRARDI then knew, no
further court orders were necessary.

   20.  Between at least in or about 2010 and in or about December
2020, as a result of this scheme to defraud, defendants GIRARDI and

14

KAMON obtained money and property belonging to victim Clients 1-5 in excess of $15,000,000.

C.   USE OF THE WIRES

21.   On or about the following dates, within the Central District of California, and elsewhere, defendants GIRARDI and KAMON, aiding and abetting each other, for the purpose of executing the above-described scheme to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce the following items:

| COUNT | DATE | WIRE |
| --- | --- | --- |
| ONE | 6/17/19 | Wire Transfer of approximately $4,000,000 from City National Bank, in Los Angeles, California, through the Fedwire system to the Nano Banc IOLTA Account, in Los Angeles, California, from the settlement related to Client 4 and Client 5, which defendants GIRARDI and KAMON caused to be spent, in part, for costs and expenses unrelated to Client 4 and Client 5. |
| TWO | 7/1/19 | Wire clearing an approximately $2,500,000 check drawn on the Nano Banc IOLTA Account, in Los Angeles, California and deposited into First Century Bank, in Los Angeles, California, which wire traveled via a server located in Oklahoma City, Oklahoma, for the benefit of Client 1, the source of which funds was, in part, the settlement proceeds belonging to Client 4 and Client 5. |
| THREE | 5/22/20 | Wire Transfer of approximately $128,250 from Bank of America, in New York, New York, through the Fedwire system to the Torrey Pines IOLTA Account, in Los Angeles, California, from the settlement related to Client 3, which defendants GIRARDI and KAMON spent, in part, for costs and expenses unrelated to Client 3. |
| FOUR | 6/25/20 | Wire clearing a check of approximately $504,400 by drawing upon a JPMorgan Chase Bank account in Fort Washington, New York, and crediting funds to the Torrey Pines IOLTA Account in Los Angeles, California, representing Client 2's settlement proceeds, spent, in part, for costs and expenses unrelated to Client 2. |

| COUNT | DATE | WIRE |
|-------|------|------|
| FIVE | 7/9/20 | Wire transfer of approximately $15,000 from a Girardi Keese operating account in Los Angeles, California, to American Express via a server located in Phoenix, Arizona, as payment for charges incurred on the Girardi Keese Corporate American Express Card issued to defendant KAMON, the source of which funds was, in part, the settlement proceeds belonging to Client 2 |

//

//

//

16

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant THOMAS VINCENT GIRARDI's and/or defendant CHRISTOPHER KAZUO KAMON's conviction of and of the offenses set forth in any of Counts One through Five of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

1 │ substantially diminished in value; or (e) has been commingled with

2 │ other property that cannot be divided without difficulty.

3 │                                           A TRUE BILL

4 │

5 │                                           /S/

6 │                                           _____
   │                                           Foreperson

7 │ E. MARTIN ESTRADA
   │ United States Attorney
8 │

9 │

10 │ MACK E. JENKINS
    │ Assistant United States Attorney
11 │ Chief, Criminal Division

12 │ RANEE A. KATZENSTEIN
    │ Assistant United States Attorney
13 │ Chief, Major Frauds Section

14 │ SCOTT PAETTY
    │ Assistant United States Attorney
15 │ Deputy Chief, Major Frauds Section

16 │ ALI MOGHADDAS
    │ Assistant United States Attorney
17 │ Major Frauds Section

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │